## CENTAUR CO. v. HEINSFURTER et al.

### (Circuit Court of Appeals, Eighth Circuit. January 10, 1898.)

### No. 899.

TRADE-MARKS—PATENTED ARTICLES—EXPIRATION OF PATENT.

When a patented article becomes known by a particular name, though an arbitrary one invented by the patentee, such as "Castoria," such name becomes public property on the expiration of the patent; and no trade-mark right exists therein, or can be acquired by subsequent use. Singer Mfg. Co. v. June Mfg. Co., 16 Sup. Ct. 1002, 163 U. S. 169, followed.

Appeal from the Circuit Court of the United States for the District of North Dakota.

This is a suit brought by plaintiff in the circuit court of the United States for the district of North Dakota to restrain the defendants from the use of the word "Castoria," claimed by it as a trade-mark. The bill, filed on June 10, 1896, alleges that plaintiff is a corporation engaged in the business of manufacturing and selling, in bottles, with labels thereon, a certain vegetable preparation for assimilating the food, and regulating the stomachs and bowels, of infants, designated and known by the trade-mark or name of "Castoria"; that one Dr. Samuel Pitcher first used said name as a trade-mark; that he used the same prior to May 12, 1868, at which time letters patent of the United States, numbered 77,758, were granted to him for a composition to be employed as a cathartic, or substitute for castor oil; that the word "Castoria" nowhere occurs in the specifications, or appears upon or in connection with said letters patent, but was adopted and used as a trade-mark; that it is not a general designation for the preparation, is not descriptive of the same, or of the ingredients of which it is composed, but has been used purely and arbitrarily to point out the origin and ownership thereof by plaintiff and its predecessors, as manufacturers of the same. The bill sets forth in detail the various transfers by which all the rights of Samuel Pitcher passed to plaintiff, and avers that it had expended large sums of money in advertising and placing said preparation before the public under the name of "Castoria" or "Pitcher's Castoria," and that the preparation had acquired a recognized and standard reputation throughout the land. The bill further charges that defendants are commencing the business of manufacturing and selling a medicinal preparation under the designation of "Castoria"; that they have issued circulars describing themselves as the manufacturers and sellers of Castoria, in which circulars they claim and represent that the medicine which they are making and selling is the only one on the market which is prepared according to the recipe originally prescribed by said Dr. Pitcher, and for which the patent was issued, and that, under the name of "Castoria" an article had for years been imposed upon the public, the ingredients of which were different from those used by Dr. Pitcher,—thus, as is claimed, representing that plaintiff's manufacture is a spurious article. The prayer is that defendants be enjoined from "directly or indirectly manufacturing and putting up, selling, advertising, offering, or exposing for sale any preparation for assimilating the food, and regulating the stomachs and bowels, of infants and children, or as a remedy for the troubles of infants and children caused by indigestion, and other irregularities of the stomachs and bowels, under said name, 'Castoria,' or under any word or combination of words liable to create confusion in the mind of the public with that used by your orator as a trade-mark as aforesaid, and which will in any manner simulate said trade-mark, so as to be calculated to deceive or mislead purchasers of the same, either in large or in small quantities, at wholesale

or retail, and infringe upon the said exclusive rights of your orator." After answer, and upon pleadings and proofs, the circuit court, on January 16, 1897, entered a decree in favor of the defendants, dismissing the bill, from which decree this appeal was duly taken.

F. W. Lehmann and Edmund Wetmore (Henry S. Priest, Hubert A. Banning, William H. Bliss, William E. Hale, and Wilbur F. Boyle, on the brief), for appellant.

C. L. Bradley and J. W. Tilly, for appellees.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and RINER, District Judge.

BREWER, Circuit Justice, after stating the case as above, delivered the opinion of the court.

This case turns upon the question whether the plaintiff has an exclusive right to the use of the word "Castoria" as a trade-mark; for, except by the use of that word, there is no evidence in the record of anything done by defendants calculated to mislead purchasers into the supposition that they are buying an article manufactured by the plaintiff. On the contrary, the circulars sent out by the defendants call attention to the fact that they are the only parties manufacturing Castoria according to the original formula of Dr. Pitcher, and, though not in terms naming the plaintiff, yet, as it was the only other party engaged in the manufacture and sale of Castoria, plainly casting reflections upon it, as not giving to the public a genuine article. In other words, the defendants went into the market, representing themselves as manufacturing and selling Castoria, and declaring that that which they manufactured was the only genuine Castoria; that all other manufactures placed on the market were spurious. So that it cannot be pretended that they were deceiving the public with the idea that the article which they manufactured and sold was something manufactured and sold by plaintiff, unless that deception resulted from the use of the word "Castoria." Hence, if the defendants had a right to use the word "Castoria," as descriptive of the article which they were manufacturing and selling, there can be no doubt that the decree was rightly entered in their favor. Whether the defendants had a right to use this name depends on the further question whether the word "Castoria" is the generic name of the thing manufactured and sold, or is a mark or name used to distinguish one party by whom the thing is manufactured and sold from all other manufacturers of that thing. The relation of the patent to this matter must be first considered. In 1868 Dr. Pitcher compounded a medicine, composed of various ingredients, according to a certain formula which he invented and discovered. For this invention and discovery he obtained a patent, which gave to him the exclusive right of making, using, and selling this new medicine. During the life of that patent he alone, or his successors in interest, had the right to manufacture and sell that medicine, by whatsoever name it might be called. The patent gave no right to any particular name, but simply to the exclusive manufacture and sale. All such rights expired in 1885, and from that time forth any party has had a right to manufacture and sell that particular compound, and also a right to manufacture and sell it under the name by which it has

become generally known to the public; and, if to that public the article has become generally known only by a single name, that name must be considered as descriptive of the thing manufactured, and not of the manufacturer. It is true that during the life of a patent the name of the thing may also be indicative of the manufacturer, because the thing can then be manufactured only by the single person; but, when the right to manufacture and sell becomes universal, the right to the use of the name by which the thing is known becomes equally universal. It matters not that the inventor coined the word by which the thing has become known. It is enough that the public has accepted that word as the name of the thing, for thereby the word has become incorporated as a noun into the English language, and the common property of all. Whatever doubts may theretofore have existed on this proposition have been, for the federal courts, put at rest by the recent decision of the supreme court in the case of Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002. In that case it appeared that the Singer Manufacturing Company, under its patents, had the exclusive right to manufacture and sell a certain class of sewing machines, known as "Singer Machines." After the expiration of the patents it claimed a trade-mark in the word "Singer," on the ground that that word was not only descriptive of the kind of machine, but had also become indicative to the public of the origin of manufacture; but this claim was denied, and it was held that there was no trade-mark in the word "Singer" which would prevent others from using it as descriptive of the sewing machines of like kind which they were manufacturing and selling. The opinion of Mr. Justice White is an exhaustive discussion of the question, covering substantially all the points made in this case. There, as here, it was urged that during the life of the patent the word had become, not only descriptive of the thing, but indicative of the source of manufacture, and by virtue of the latter fact was entitled to protection as a trade-mark; and upon this the court said (page 183, 163 U. S., and page 1007, 16 Sup. Ct.):

"We conclude, then, upon the two pivotal and controverted questions of fact which we proposed at the outset to consider: (1) That the Singer sewing machines were covered by patents which gave to the manufacturers a substantial monopoly; that, in consequence of the enjoyment of this monopoly by the makers, the name 'Singer' came to indicate, in its primary sense, to the public, the class and type of machines made by the Singer company or corporations, and thus this name constituted their generic description: that, also, as this name applied to and described machines made alone by the Singer firm or corporations, the use also came, in a secondary sense, to convey to the public mind the machines made by the firm or corporations. (2) That the word 'Singer' was also voluntarily applied by the Singer firm or companies as a designation of the general type of machines made by them, with the intention that such machines should be accepted by the public under that name. Thus, the course of the business, and the purposes for which the name 'Singer' was used, brought about results identical with those which sprang from the existence of the monopoly. Hence that name became, not only the description of the machines, but also, in a subordinate sense, the indication of the source of manufacture."

Yet, notwithstanding this, it was held that, because the word had become descriptive of the thing, it could not be appropriated as a trademark; and the conclusion was summed up in these words (page 199, 163 U. S., and page 1014, 16 Sup. Ct.):

"The result, then, of the American, the English, and the French doctrine, universally upheld, is this: That where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created. Where another avails himself of this public dedication to make the machine and use the generic designation, he can do so in all forms, with the fullest liberty, by affixing such name to the machines. by referring to it in advertisements, and by other means, subject, however, to the condition that the name must be so used as not to deprive others of their rights, or to deceive the public, and, therefore, that the name must be accompanied with such indications that the thing manufactured is the work of the one making it as will unmistakably inform the public of that fact." ·

It is true, in that case there also appeared certain matters which the court held were sufficient to indicate an effort on the part of the defendant to deceive the public into the idea that the machines which it was manufacturing and selling were in fact manufactured and sold by the Singer Company; and, to the extent of restraining any such accompanying devices, it was held that the plaintiff was entitled to an injunction. But, as we have heretofore observed, in the present case, outside of the use of the word "Castoria," there is nothing to mislead the public into the belief that the Castoria manufactured and sold by the defendants was in fact manufactured and sold by the plaintiff. On the contrary, the information was full and specific that the defendants were the manufacturers and vendors. Counsel seek to distinguish this case, in that there the controversy arose immediately after the expiration of the patent, while here the plaintiff continued in the exclusive manufacture of Castoria for some 10 years thereafter, and hence it is insisted that, during the time when the right to manufacture and sell was common, it acquired a trade-mark in the name. But this matter of time makes no difference. The word had become known as the name of the thing, and as such it could not be appropriated as a trade-mark. Canal Co. v. Clark, 13 Wall. 311; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625. As well might a manufacturer of flour claim a trade-mark in the word "flour," as the manufacturer of "Castoria" a trade-mark in that name. The case of Manufacturing Co. v. Nairn, 7 Ch. Div. 834, is much in point. The word "Linoleum" was a fancy name invented by one who had obtained a patent for a new kind of floor cloth, and during the life of the patent the public came to know the article as "Linoleum Floor Cloth," or simply "Linoleum." At the expiration of the patent the defendant entered upon the manufacture and sale of Linoleum floor cloth, calling it by that name, and this was a bill to restrain the use of the name. It was held that the action could not be maintained. In the course of his opinion, Mr. Justice Fry said (page 836):

"In the first place, the plaintiffs have alleged, and Mr. Walton has sworn, that having invented a new substance, namely, the solidified or oxidized oil, he gave to it the name of 'Linoleum,' and it does not appear that any other name has ever been given to this substance. It appears that the defendants are now minded to make, as it is admitted they may make, that substance. I want to know what they are to call it. That is a question I have asked, but I have received no answer; and for this simple reason, that no answer could be given, except that they must invent a new name. I do not take that to be the law. I think that, if 'Linoleum' means a substance which may be made by the de-

fendants, the defendants may sell it by the name which that substance bears. * * * In my opinion, it would be extremely difficult for a person who has been, by right of some monopoly, the sole manufacturer of a new article, and has given a new name to the new article,—meaning that new article, and nothing more,—to claim that the name is to be attributed to his manufacture, alone, after his competitors are at liberty to make the same article."

See, also, Manufacturing Co. v. Shakespear (1869) 39 Law J. Ch. 36.

That the word "Castoria" has become the one name by which this medicine is generally known, does not admit of doubt. The testimony makes this perfectly clear. No other name is suggested by which the article is called. It is universally bought and sold as "Castoria," and not by any other name. Indeed, the court might almost take judicial notice of this fact. Beyond the testimony of witnesses as to the general use of the name, may be noticed the plaintiff's bill, in which it is averred that, by virtue of a great expenditure in advertising, the preparation "has become extensively known to the public as 'Castoria,'" and nowhere in the bill is any other name given by which the medicine is known or called. Further, the documents which the plaintiff offered in evidence to show the successive transfers of title from the original owner to itself all indicate that "Castoria" is the name, and the only name, of the medicine. The certificate of the organization of Pitcher's Manufacturing Company on March 4, 1870, described it as a "corporation established at Boston, in said commonwealth, for the purpose of manufacturing Castoria." The option of purchase given by the Pitcher Manufacturing Company to Joseph B. Rose on January 17, 1872, was of the "right to manufacture and sell a medicine called 'Castoria.'" The bill of sale on January 22d, following this option, also described the thing sold as the "right to manufacture and sell a medicine called 'Castoria.'" In January, 1872, in an assignment by Rose to Demas Barnes, is this description: "The exclusive right to use the name of the said Samuel Pitcher in connection with the manufacture and sale of the said patented medicine, named 'Castoria.'" In an assignment by Barnes to his wife on December 31, 1872, the description is "a medicine known as 'Castoria,' or 'Pitcher's Castoria.'" In an assignment by Mrs. Barnes to Demas B. Dewey, March 25, 1876, are found like words of description. And so through other documents. It is true, in these various documents reference is made to the claim of a trade-mark, and that is included among the properties transferred; but this does not change the fact that the only name by which the article is called is "Castoria," or "Pitcher's Castoria." Many advertisements and circulars were also introduced in evidence by the plaintiff. In these the medicine is always called "Castoria," or "Pitcher's Castoria." So that, beyond the testimony of individuals as to the general use of the word, the plaintiff's bill, the documents and advertisements introduced by it show that this article was and is known by that name, and by that name only. Within, therefore, the decision in Singer Mfg. Co. v. June Mfg. Co., supra, the word "Castoria," being the generic name by which the article is known to the public, has become the property of the public, and any one is at liberty to use it as descriptive of the thing he is manufacturing and selling. We see no error in the ruling of the circuit court, and its decree is affirmed.