## CENTAUR CO. v. MARSHALL et al.

(Circuit Court, W. D. Missouri, W. D. February 6, 1899.)

1. TRADE-MARKS—PATENTED ARTICLES—EXPIRATION OF PATENT.

When a patented article becomes known by a particular name, though an arbitrary one invented by the patentee, such as "Castoria," such name becomes public property on the expiration of the patent; and no trade-mark right exists therein, or can be acquired by subsequent use. Centaur Co. v. Heinsfurter, 28 C. C. A. 581, 84 Fed. 955, followed.

2. SAME—PRELIMINARY INJUNCTION—INEQUITABLE CONDUCT.

The owner of a patent for a medicine enjoyed the protection of the patent during its term, and asserted in litigation that it claimed under the patent. After expiration of the patent, in order to claim a trade-mark in the name by which the patented medicine was known, it asserted for the first time, in a bill for injunction, that in the preparation of the medicine it varied from the formula of the patent. *Held*, that this conduct was not such as to commend itself to a court of equity, on a motion for preliminary injunction against alleged unfair competition.

3. SAME—UNFAIR COMPETITION—IMITATION OF LABELS.

When the differences between the labels are so marked that it is hardly conceivable that even the casual observer who had been in the habit of purchasing complainant's goods, or who had acquired any knowledge of or preference for it, would mistake the one for the other, an injunction will be denied, especially when there is no proof that any purchaser was actually so misled.[1]

4. SAME.

When complainant has no trade-mark right in the name under which an article is sold, and there is no misleading imitation of his labels or other indicia, he has no standing to complain that defendant is palming off a spurious article upon the public, or is using "fake" testimonials in his advertising.

5. SAME.

Plaintiff long sold medicine known as "Castoria," but without having any trade-mark right in that name. Afterwards defendant began selling a medicine under the same name, with labels so different as to repel the charge of fraudulent or misleading imitation, but at the bottom thereof he placed conspicuously the words "New Label." *Held*, that he should be enjoined from so doing, as this might lead customary purchasers of complainant's article to think that complainant had adopted a new label.

Karnes, Holmes & Krauthoff and Danl. B. Holmes, for complainant.

Henry Wollman and Benj. F. Wollman, for defendants.

PHILIPS, District Judge. This case has been submitted on application for a temporary injunction. The bill was drawn with a double aspect: First, to restrain the defendants from using the name "Castoria" in their business of manufacturing and putting on the market the medicine or drug known by such name, on the ground that the complainant has acquired a trade-mark right to said name; and, second, that by reason of their imitation of the wrapper, label, and other indicia of complainant's manner of preparing the bottles containing the medicine for market, the defendants are engaged in unfair competition with the complainant's business.

It has been expressly ruled by the court of appeals of this circuit (opinion by Mr. Justice Brewer), in the case of This Complainant v. Heinsfurter, 28 C. C. A. 581, 84 Fed. 955, that, the patent under

[1] As to unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

which the medicine known by the name of "Castoria" was manufactured and sold having expired in 1885, the name which was descriptive of the article became public property, and that no trade-mark right exists therein, or could be acquired by subsequent use. It was further held that the right to manufacture Castoria, and to use the name in selling it, are also public property. This proposition was definitely settled by the supreme court in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002. Mr. Justice White, who delivered the opinion of the court, said:

. "It is self-evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to make the same, formerly covered by the patent, becomes public property. It is upon this condition that the patent is granted. It follows, as a matter of course, that on the termination of the patent there passes to the public the right to make the machine in the form in which it was constructed during the patent. * * * It equally follows, from the cessation of the monopoly and the falling of the patented device into the domain of things public, that along with the public ownership of the device there must also necessarily pass to the public the generic designation of the thing which has arisen during the monopoly, in consequence of the designation having been acquiesced in by the owner, either tacitly, by accepting the benefits of the monopoly, or expressly, by having so connected the name with the machine as to lend countenance to the resulting dedication. To say otherwise would be to hold that, although the public had acquired the device covered by the patent, yet the owner of the patent, or the manufacturer of the patented thing, had retained the designated name, which was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly. In other words, that the patentee or manufacturer could take the benefit and advantage of the patent, upon the condition that at its termination the monopoly should cease, and yet, when the end was reached, disregard the public dedication, and practically perpetuate indefinitely an exclusive right. The public having the right on the expiration of the patent to make the patented article, and to use its generic name to restrict this use, either by preventing its being placed upon the articles when manufactured, or by using it in advertisements or circulars, would be to admit the right, and at the same time destroy it. It follows, then, that the right to use the name in every form passes to the public with the dedication resulting from the expiration of the patent."

With the evident purpose to avoid, if possible, the effect of this ruling, the bill of complaint ingeniously asserts that Dr. Pitcher, the patentee, and the complainant holding under him through assignments, did not strictly follow the formula of the prescription in the patent, as to one ingredient, and therefore the complainant has acquired, by long usage, a trade-mark in the word "Castoria," and that all other persons ought to be denied its use under any and all circumstances and conditions. This is a remarkable position for this complainant now to assume in a court of equity. During the life of the patent, it and its predecessors in right have enjoyed the protection of the patent, warning off all intruders, up to the adjudication against the complainant in the Heinsfurter Case, decided in January, 1898. In that case the complainant alleged that its right to such exclusive use was covered by the Pitcher patent, "numbered 77,758, granted to him for a composition to be employed as a cathartic, or substitution for castor oil," etc. When the patent was obtained the same formula was upon the article as now. And, before the trade-mark act was declared unconstitutional, the predecessor of the complainant, in the right by assignment to said patented article, in 1883, made application to have the trade-mark of the word "Castoria" registered; and

in that statement it was represented that the applicant had used the same in business since 1878, when she purchased the preparation or combination to which the same is applicable, "by deed of assignment of Demas B. Dewey, then owner of the same by assignment from Samuel Pitcher, who used the same before May 12, 1868, and to whom were issued letters patent No. 77,758, dated May 12, 1868, covering the composition to which I apply this trade-mark." In all of the advertisements of this article by the complainant, it refers to it as "Castoria—the kind you always bought." For the complainant now to change front, and announce to the court that it has not in fact followed the patented prescription, is little less than to plead its own deception upon the public, and to ask a court of equity to protect it so as to prevent any other person from either following the original formula, or from using the name "Castoria," where the party has substituted or added some one ingredient to the formula. Mr. Justice Field, in Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, discussing a kindred question, quoted the language of the lord chancellor in Leather Cloth Co. v. American Leather Cloth Co., 4 De Gex, J. & S. 137, and 11 H. L. Cas. 523:

"When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should, in his trade-mark, or in the business connected with it, be himself not guilty of any false or misleading representations; for, if the plaintiff makes any material false statements in connection with the property he seeks to protect, he loses—and that justly—his right to claim the assistance of a court of equity. * * * Where a symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct assertion which is false, I think no property can be claimed in it, or, in other words, the right to the exclusive use of it cannot be maintained."

Judge Taft, in Krauss v. Jos. R. Peebles' Sons Co., 58 Fed. 585, applied the same doctrine.

On the hearing of this application for a temporary injunction, it was stated by counsel for complainant that he did not expect or ask the court, as a basis for granting a temporary injunction, to determine whether or not, by reason of the matters alleged in the bill, the complainant was entitled, notwithstanding the ruling in the Heinsfurter Case, to assert the existence of the trade-mark right in the name "Castoria"; and therefore the court only presents this matter as it bears upon and affects the other ground of relief stated in the bill. If, as stated in the bill of complaint, and the affidavit of Mr. Fletcher presented in support thereof on this hearing, the complainant and its predecessors did depart in some material particular in the composition of Castoria from the original formula or prescription in the specifications of the patent, it does not appear that it ever took any pains to advise the public of such fact; and having during the life of the patent enjoyed its protection, and asserted in its litigation with Heinsfurter up to January, 1898, that it was claiming under the patent, its conduct in changing front, and now asserting a right to be protected for an acquired trade-mark in the name "Castoria," for the reason that it has not strictly followed the specifications of the patent, does not commend itself to a court of equity.

And it is difficult to separate this claim, presented both in the bill of complaint and the affidavit of Mr. Fletcher, presented to this court on the hearing, from the consideration of the remaining question, as to whether or not the defendants have been guilty of unfair competition. The complainant, notwithstanding it may not have asserted the trade-mark right, may have acquired an exclusive right to the manner of dressing up its preparation for sale, in the matter of labels, wrappers, and other indicia, so as to entitle it to the protection of the courts against imitative devices by other manufacturers, calculated to beguile the public into purchasing such other manufactures under the impression that they are those manufactured and sold by the complainant. The wrapper (with its wording and devices) of the complainant is here presented:

The one now in use by the defendants is here presented:

Price, 35 Cents

It is true that prior to the institution of this suit the defendants used a wrapper, and at the time of the filing of the bill they were using a second wrapper, more objectionable than the one now in use. But as the defendants have satisfied the court that the first two wrappers have been abandoned by them, and will not be reused, an injunction on that ground should not be granted. The question therefore is, does the last one adopted come within the lines of forbidden imitation? It is quite obvious, even to an unscrutinizing eye, that there are radical differences on the face of these competing wrappers. The following is a fair summary of the more distinctive points of difference in the two wrappers: At the top of complainant's wrapper are the words "900 Drops," with white letters and black background, while at the top of defendants' wrapper are the words "Pitcher's Castoria,"—the word "Pitcher's" in black letters on a white background. The word "Castoria" on complainant's wrapper is in a crescent shape, with black letters and dark-colored penciled background; the letters varying in size on the complainant's wrapper from three-eighths to one-half inch. The word "Castoria" on the de-

92 F.—39

fendants' wrapper is in white letters, seven-eighths inch in length, with intense black background; the letters being of different shape from that of complainant, and on straight lines. On complainant's wrapper appear the words "Infants and Children" in white letters on black background; and, while the words "Infants and Children" appear on the defendants' wrapper, they are in larger black letters, on white ground. The formula of the composition is given on the face of complainant's wrapper, while the defendants' is on the side, with some different ingredients, and printed in much larger and more conspicuous letters. On the face of complainant's wrapper is the statement that the package contains neither morphine nor mineral, with the words, in large letters, "Not Narcotic." These words do not occur on the defendants' wrapper. On the reverse side of complainant's wrapper occurs the fac simile signature of "Chas. H. Fletcher," stated to be "on every wrapper." And on the face and elsewhere occurs the fac simile signature of "Chas. H. Fletcher, New York." The defendants' wrapper states specifically on its face that it is "Prepared by the Castoria Medicine Co., Kansas City, U. S. A."; and on the reverse side is given, as the evidence of "our genuine Castoria," the fac simile signature "on every label" of "Geo. W. Marshall." At the bottom of complainant's wrapper, with a black background three-eighths inch wide, occur in white letters the words, "At 6 months old 35 Doses—35 Cents." These words do not appear on the defendants' wrapper, but at the bottom of the wrapper occur the words, "Price, 35 Cents." On the face of the defendants' wrapper occur the words, "Who take it are cheerful, playful & healthy," not found on complainant's wrapper. On the two edges of complainant's wrapper are printed, in Spanish and French, legends or "catches," each one signed, "Chas. H. Fletcher, New York," while on only one edge of defendants' wrapper is a catch or legend, in German, with the words at the left-hand corner, "Kansas City," with the name of "Geo. W. Marshall" on the right-hand corner. On the other edge of defendants' wrapper is given the formula of "Pitcher's Castoria," signed, "Geo. W. Marshall," with the words "Kansas City" in the left-hand corner. On the back of complainant's wrapper is German print signed by "Chas. H. Fletcher, New York," whereas the language on the same side of defendants' package is in English, signed by "Geo. W. Marshall," of an entirely different composition, in which it is stated that: "This is the Genuine and Original Dr. Pitcher's Castoria compounded from the purest and most select ingredients. Buy no other." Complainant's wrapper is of yellow tint. That of defendants is white. The defendants' package is a little longer and wider than complainant's. The bottles differ somewhat in shape,—sufficiently to attract the attention of a casual observer. The neck of complainant's bottle is narrower at the top than the base, whereas the neck of defendants' bottle is the same width throughout, and has a heavy, round ring, while complainant's is smooth. And while it is true that the defendants have put upon the sides of their bottle practically the same directions, and a German legend, in respect of the wording, yet they are differently arranged; and what most obviously distinguishes these from com-

plainant's is the fact that on both sides of complainant's bottle the fac simile signature of "Chas. H. Fletcher," in glaring red letters, is stamped slantingly, while nothing of the kind appears on the flat sides of defendants' bottle. This difference is so pronounced that it would at once attract the attention of any purchaser who had ever used complainant's goods, the moment he removed defendants' wrapper. Blown into the edges of complainant's bottle are on one side the word "Castoria," and on the other "Dr. S. Pitcher's," while on the corresponding edges of the defendants are the words "Dr. Pitcher's Castoria," and "Castoria Medicine Company." These differences, in the main, are so marked that, in the absence of some other confusing indicia or device, it is hardly conceivable that even the casual observer who had been in the habit of purchasing complainant's goods, or who had acquired any knowledge of, or preference for, its Castoria, would mistake the one for the other. Putting the question in another form, reversing the position of the parties: Suppose that the defendants were seeking to enjoin the Centaur Company on the ground of undue competition in imitating defendants' wrappers, label, and indicia of manufacture; what standing would they have in court, on the comparison made herein? Superadded to the foregoing, it appears that in almost every conceivable way the complainant has taken pains to advise the public of its proprietorship and indicia of the Castoria made and sold by it. Conspicuous on the wrapper and label and every print in connection with its bottles is given the fac simile of the signature of "Chas. H. Fletcher," as the token of the genuine Castoria. And in the most extensive advertisements and placards the fact is made prominent everywhere that it is Fletcher's Castoria, manufactured and sold by the Centaur Company, to be looked after by the purchaser. As stated on the hearing, and shown by some of the exhibits, not controverted by the complainant, in the leading newspapers throughout the Union, in glaring display, the public are advised that Fletcher's Castoria is the only genuine article to be looked out for by purchasers, and the public are warned against all other manufactures. So it would appear that, if complainant has in fact established any trade-mark, it would be the name of "Chas. H. Fletcher," connected with "Castoria." So far from defendants in any way or anywhere imitating this name, they have, with singular conspicuity, on the wrapper and elsewhere, directed attention to the fact that their genuine Castoria bears the fac simile signature of "Geo. W. Marshall," and that this medicine is made by "the Castoria Medicine Company, Kansas City, U. S. A."

The bill does not allege, nor does it appear from the affidavits filed in support, that any purchaser of defendants' Castoria has ever been deceived into the belief that he was purchasing that of the complainant, or that the defendants have ever represented to any person that their goods were those of the complainant, or that they were laying any other claim to their product than that they were putting upon the market the original Pitcher's Castoria. No objection can be made to the latter representation made by the defendants by any one not entitled to the exclusive use of that formula, which the complainant does not have. In other words, unless the defendants, in some form

or manner, by their wrapper, label, wording, devices, or conduct, in presenting their goods to the public, so present the same as to likely deceive the purchaser into the belief that he is getting Castoria made and sold by the complainant, it is no business of its what the defendants do, or how they do it. It is claimed, for instance, by the complainant, that defendants employ some ingredients, such as watermelon seed, in their preparation, not found in the formula of Dr. Pitcher; and therefore the defendants are palming off on the community a spurious article. The complainant is not the guardian of the public against impostors or imposition. Whether the substitution for, or an addition to, the ingredients of Dr. Pitcher's prescription be an improvement, or deleterious, does not concern this complainant, unless it can make it appear that what the defendants are making and offering to the public is in some forbidden way represented to be the article manufactured and sold by the complainant. This is peculiarly so when the bill of complaint, as does the affidavit of Charles H. Fletcher in support thereof, discloses the fact that it is not fully pursuing the formula patented to Dr. Pitcher, and does not claim that it ever took any pains to advise the public of any departure therefrom, but, on the contrary, as already shown, has occupied for 30 years the attitude of pursuing Dr. Pitcher's formula, with a prescriptive right to its use.

Complaint is made in argument, based upon an affidavit, that the defendants, in one of their circulars inclosed within their wrappers, gave what purports to be an extract from Hall's Journal of Health commendatory of Castoria, which it claims was not furnished to the defendants, but to the complainant and its predecessors, with the exception that the defendants have interpolated in their circular the words "watermelon seed," as a part of the composition, so as to make it conform to the formula given on their label. It would be a sufficient answer to this criticism to say that no issue is presented respecting this in the matters complained of in the bill. Aside from this, however, it is expressly stated on the face of this circular that: "To guard against imitations, see that our fac simile signature by the Castoria Medicine Company is on every wrapper. Castoria Medicine Company." And on the back of this circular appears what are claimed to be commendatory letters from patrons, addressed to the Castoria Medicine Company, Kansas City, Mo. So there is nothing about it to indicate that the goods offered by the defendant company were represented to be of the make of the Centaur Company. Unless the courts, in view of a recognized habit of most of the concerns engaged in exploiting like drugs to present "fake" testimonials, ought to apply the maxim, "Consensus facit legem, communis error facit jus," we might justly reprehend the act of the defendants for circulating fictitious testimonials; yet the courts have not undertaken to enjoin the practice at the instance of some competing tradesman, except when and where it is made to appear that what the defendant is doing is such an imitation of the complainant's earmarks as is reasonably calculated to impose upon purchasers, in mistaking the goods of the one for those of the other. To avoid even the appearance of offense in this particular, defendants' counsel

offer to discontinue the use of this portion of the circular, and, if they will file in this case their written statement to this effect, it will be accepted by the court; and it should be satisfactory to the complainant, if its purpose in this litigation be merely to prevent unfair competition in business, and not to wholly occupy the field in exploiting the medicine known as "Castoria."

Objection is made in argument, though not asserted in the bill of complaint, to the fact that defendants have printed on the face of their wrapper the words: "Children cry for it; physicians recommend it," etc. These words do not appear on complainant's wrapper, or elsewhere about its bottles; but its contention is that this phrase has become catchwords appropriated by it in advertising. It is not claimed that complainant has acquired any trade-mark in these words, or that they are descriptive of its manufacture. Therefore the only possible ground upon which the interference of the court can be invoked against the use of the expression by the defendants on their wrapper must be that it is calculated to impress purchasers of defendants' Castoria with the belief that they are buying that of complainant's manufacture. The case of Reddaway v. Hemp-Spinning Co. [1892] 2 Q. B. 639, cited by counsel, does not support the contention that such words, employed in the manner stated here, should be regarded as descriptive of complainant's manufacture. In that case the plaintiff sold belting for machinery, which they called "Reddaway Camel-Hair Belting." The defendant later sold the "Bentham Camel-Hair Belting." It was held by the court that the catchwords are "Camel-Hair Belting," and therefore the plaintiff was entitled to have their use restrained, because of the liability to pass off defendant's goods as those of the plaintiff. If the complainant here has any such catchword it is rather that of "Fletcher's Castoria." The statement that "children cry for it, and physicians recommend it," is rather the expression of a fact in commendation of the virtue of Castoria as a medicine for children, than descriptive or indicative of that manufactured by the complainant. If children do cry for, or physicians do recommend, defendants' Castoria, there is no law known to this court that would prevent them from advertising the fact to enhance sales, and no law that gives to the complainant the exclusive use of such term of expression.

The defendants employ upon the face of their wrapper, at the bottom thereof, the words "New Label," which impeach, in my judgment, their good faith. For what purpose are these words thus printed? No satisfactory explanation is furnished in the affidavit presented by Mr. Marshall. It cannot be said, even plausibly, that these words refer to the fact that, as defendants had used two other wrappers prior to this, they merely sought to let it be known to purchasers that the Castoria under the new cover is the same heretofore put upon the market by them under the older covers; for the palpable reason that these words, in the same position, appear on both of the antecedent wrappers. A purchaser who had been in the habit of buying Fletcher's Castoria, on seeing these words so conspicuously on the defendants' wrapper, might be deceived thereby into the conclusion that while this wrapper, in its general appear-

ance, is quite different from that usually employed by the Centaur Company, perhaps the old company had dressed up its goods in a new cover. The use of the words "New Label" by the defendants will be enjoined.