GREENE, TWEED & CO. v. MANUFACTURERS' BELT HOOK CO.

(Circuit Court, N. D. Illinois, E. D.  June 1, 1906.)

No. 27,835.

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION.

The name of a patentee of an article of a new and original type, by which such type becomes known or distinguished in the trade, after the expiration of the patent may lawfully be used by any maker or dealer to designate articles of that type, and such use is not within the rule of unfair competition.

[Ed. Note.—Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. SAME—MARKING OF PATENTED ARTICLE—EXPIRATION OF PATENT.

An arbitrary symbol or device stamped by the manufacturer only on articles made under certain patents on the expiration of such patents becomes public property, and its use by others does not constitute unfair competition.

3. SAME—DESCRIPTIVE NAME—"STUD."

The word "stud," used to designate a belt fastener which is in fact a stud, is descriptive merely, and cannot be exclusively appropriated by a single manufacturer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 6.]

In Equity. On motion for preliminary injunction.

Charles K. Offield, Arthur E. Parsons, Offield, Towle & Linthicum, and Hey & Parsons, for complainant.

Dyrenforth, Dyrenforth & Lee (Douglas Dyrenforth, of counsel), for defendant.

KOHLSAAT, Circuit Judge. Complainant seeks herein to restrain defendant from fraudulently appropriating its trade-name and other indicia attaching to its good will. It appears from the record that complainant and its predecessor, the firm of Greene, Tweed & Co., have for more than 30 years been engaged in the belt fastener or belt stud business, the term being used interchangeably. In connection with the business, complainant gradually came into the use of various trade terms and symbols which are claimed to have been accepted as designating its products. One of them was the word "Blake." Another consisted in the use of two stars stamped in the stud head, between which the number indicating the size was stamped. The fasteners were put up for sale in pasteboard boxes or cartons of ordinary sizes, forms, and colors, also, it is claimed, indicating sizes and styles of fasteners.

Among the fasteners handled by complainant were included the devices of several patents, viz., those of G. W. Blake patent No. 31,859; Weston patent No. 76,861; Henry Blake patent No. 282,258; and Henry Blake patent No. 396,528. All of these, save the last named, had expired prior to the beginning of this suit. Neither the name "Blake" nor the stars were used on the entire product handled by complainant. The record justifies the proposition that Blake was the original inventor of the double headed fastener, and that type of studs was generally called and known as "Blake Studs." Various improvements have been made in the studs whereby they have been strengthened, rounded off, and made to conform in shape to the belts upon which they were to be used, but the general double headed design of Blake's first patent is still found, so that they may justly be termed, generally, Blake fasteners or studs by any one handling the same. It therefore seems clear that the mere application of that term to any one of the Blake types of fasteners cannot bring the user within the rule of unfair competition. The name is as much descriptive with reference to fasteners as is the name "Singer" with reference to sewing machines. The embossed stars upon the head of the stud between which was stamped the size number of the fastener is of somewhat hazy origin. Complainant insists they have been in use by it or its predecessors for more than 30 years. The only manner of use seems to have been in stamping or embossing them upon the fastener head. They are not referred to in complainant's business literature or advertising media. They do not appear on the boxes or cartons in which the studs are packed, nor is there evidence satisfactorily showing that the trade, wholesale or retail, placed any construction upon the use thereof upon the studs. They did not indicate the size number because they did not vary in number. There were always but two. The only clearly defined purpose they seem to serve was to disclose a somewhat servile imitation by defendant. From the affidavit of complainant's witness E. W. Blake, it appears the studs made under Blake patents generally had the stars stamped upon them. Whatever of significance there may have been in this device is now, and was at the time this suit was begun, public property as an appurtenance to the Blake and Weston patents. If the stud was always so marked by the manufacturers while

they had a monopoly thereof, it may well be claimed now that the distinctive earmarks which entered into its trade success also became public. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Centaur Co. v. Heinsfurter, 84 Fed. 955, 28 C. C. A. 581. Moreover, it does not appear from the record that all the fasteners marketed by complainant had these stars stamped upon them, notably those made of steel and the smaller sizes. It is impossible to say from the record that they were so uniformly used as to impress upon the trade any special features, either of material or manufacture.

Some reference is made in the bill and affidavits to the appropriation of the words "stud" as a further distinguishing feature of complainant's goods. It can hardly be claimed seriously that there is anything arbitrary in the use of that term. In the ordinary meaning of the word, the article is a stud. It would seem as though one might on the same showing, appropriate the word "button." It is clearly descriptive, and not susceptible of exclusive use in the connection claimed. Neither would it seem that any trade designation could be attributed to the words "Blake's Belt Studs."

It fairly appears from the record that complainant is placing its product upon the market under its 1889 patent. This patent calls for a stud with a round shank, in cross-section. The exhibits in evidence disclose a stud not having a round or cylindrical shank. Indeed, it so closely resembles the stud of the 1883 patent as to pass for that device under ordinary scrutiny. Complainant insists the record does not disclose whether the contents of the carton exhibits had been tampered with or substituted for the original contents thereof. The evidence shows the exhibits were obtained upon the open market, and they must be deemed sufficient for the purposes of this hearing. It is idle for complainant to attempt to shield itself from the charge of bad faith by producing the opinion of its lawyers advising it that such a use of the 1889 patent was permissible. The question is one of fact and not of law. To make its counsel the keeper of its expert conscience considerably and unwarrantably enlarges the area of legal responsibility.

It seems clear that, for the purposes of a preliminary restraining order complainant does not commend itself to the protection of the court at this time. The motion for a preliminary injunction is denied.