FRANK W. WHITCHER CO. v. SNEIERSON.

(District Court, D. Massachusetts. June 9, 1913.)

No. 267 (C. C. No. 869.)

1. TRADE-MARKS AND TRADE-NAMES (§ 11*)—UNFAIR COMPETITION—TRADE-MARKS IDENTIFIED WITH PATENTED ARTICLES—EXPIRATION OF PATENT.

Where during the entire life of a patent complainant, as the exclusive agent, sold the patented article under certain trade-marks of his own, the packages also bearing the patent mark, it must be presumed that the trade-marks became the identifying mark of the patented article, and on the expiration of the patent their use became free to other makers of such article.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. § 11.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—IMITATION OF DRESS OF COMPETITOR.

The right of another maker to use such trade-marks, however, is not unrestricted, but subject to the condition that they clearly distinguish their goods from those of the original maker; and such a user, who, instead of doing so, deliberately imitates the packages and dress of the original maker's goods in the respects most likely to attract attention, is chargeable with unfair competition, which will be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Suit by the Frank W. Whitcher Company against Samuel L. Sneierson. On final hearing. Decree for complainant.

Macleod, Calver, Copeland & Dike and William A. Copeland, all of Boston, for complainant.

Ellis Spear, Jr., and Edward N. Goding, both of Boston, for defendant.

DODGE, Circuit Judge. This bill seeks to restrain an alleged unfair competition by the defendant in the sale of metallic heel protectors.

The plaintiff, a Maine corporation, sells heel protectors made by the United Shoe Machinery Company. It sells them put up in packages of distinctive form and color and bearing distinctive trade-marks and labels. It claims the exclusive right to use these trade-marks and this trade dress. The trade-marks claimed are two in number—one being the word "Circlette"; the other, a representation of a shoe heel upon which is marked the outline of a series of horseshoe-shaped heel protectors. The defendant sells his heel protectors, which are practically identical in appearance and are used in the same way, for the same purposes, under labels displaying the name "Ringlette." The defendant uses also on his labels a representation of a shoe heel upon

which is marked the outline of a series of similar protectors; the principal difference being that the plaintiff shows three protectors upon an entire heel, and the defendant four, upon a heel of which a considerable proportion appears cut away, certain words not in plaintiff's trademark being displayed within the cut-away area.

The plaintiff's packages bear the inscription "Patented Sept. 8, 1896." No reference is made either in the bill or answer to any patent. The defendant's evidence tends to show that the plaintiff's heel protectors are within United States patent 567,463, to William Frost, dated September 8, 1896; also that Frost had taken out a British patent, numbered 1,381, and dated May 18, 1895, for an invention substantially identical with that afterward covered by his United States patent mentioned, and that the British patent expired January 21, 1909. The defendant contends that Frost's United States patent expired with his British patent—relying on United, etc., Co. v. Duplessis, 155 Fed. 842, 84 C. C. A. 76. The plaintiff has not undertaken to contradict this evidence or to dispute this claim. It relies upon alleged rights in its trade-marks and packages, existing independently of any patent.

[1] The defendant does not dispute that:

"From 1894, or earlier, the complainant and its predecessors in business sold heel protectors, as shown in the exhibits in evidence, under the name of 'Circlettes,' and no other name was ever used by complainant to designate such heel protectors."

It appears from the plaintiff's uncontradicted evidence that the name "Circlette" and the other trade-mark above described were first adopted by the Sanford Manufacturing Company, whereof Frank W. Whitcher was treasurer, in the year 1894; that the Sanford Company thereafter made and sold heel protectors of the kind here in question, in packages of the same distinctive form and color and bearing the same labels, having upon them the above trade-marks, exclusively through Frank W. Whitcher & Co., a firm to which he belonged, until 1902; that in 1902 it transferred its rights to the United Shoe Machinery Company, which has since made heel protectors of the same kind; that since the transfer in 1902 they have been sold in precisely similar packages and under the same labels and trade-marks, exclusively through the firm referred to or through the plaintiff corporation, which, organized in 1908, succeeded to the firm's rights, under an exclusive right to sell them in the United States acquired from the United Shoe Machinery Company when the latter company acquired the Sanford Company's rights.

The defendant's alleged infringement began about March 1, 1911. It further appears from the plaintiff's uncontradicted evidence that since 1894 such heel protectors, so packaged and labeled, have been sold under the trade-marks referred to throughout the United States, and that the business done in them has been extensive; also that the packages, labels, and trade-marks used as above in selling them had, in 1911, become identified with heel protectors of the kind made originally by the Sanford Company, afterward by its successor, and sold originally by the Whitcher firm, afterward by its successor, the plain-

tiff. These packages, trade-marks, and labels had then come to indicate to the public that heel protectors so packaged and labeled, and bearing the trade-marks referred to, came from the original makers and sellers, or from their lawful successors.

If the plaintiff has the exclusive right to use "Circlette" as its trademark, I think it clear that the defendant's use of "Ringlette" is an infringement which should be enjoined. Stamford, etc., Co. v. Thatcher, etc., Co. (D. C.) 200 Fed. 324, is one of the most recent of the many decisions to the same effect upon similar facts.

But the plaintiff's statement on its packages, "Patented Sept. 8, 1896," warrants the conclusion that its "Circlettes" were made and sold under the Frost patent; no other patent covering heel protectors of that date being shown to exist. If this was the case, the fair presumption is that the name "Circlette" became the identifying and generic mark of the patented thing during the life of that patent; that is, between 1896 and 1909. If so, the right to use the name passed to the public with the cessation of the patented monopoly. Singer, etc., Co. v. June, etc., Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Yale & Towne, etc., Co. v. Worcester, etc., Co., 195 Fed. 528, 115 C. C. A. 491; Yale & Towne, etc., Co. v. Ford (C. C. A.) 203 Fed. 707. The plaintiff contends that the Sanford Company's adoption and use of the name in connection with the patented thing, beginning in 1894, is shown to have antedated the Frost patent; and it relies on Batcheller v. Thomson, 93 Fed. 660, 35 C. C. A. 532; Avenarius v. Kornely, 139 Wis. 247, 121 N. W. 336. I am unable to find sufficient reason in the evidence for concluding that it was between 1894 and September 8, 1896, that "Circlette" became the identifying and generic mark of the patented thing, and must therefore hold that "Circlette" as a trademark has ceased to be the exclusive property of the plaintiff or of any one through whom it claims. My conclusion must be the same as to the representation of a shoe heel, above described, in which the plaintiff also claims exclusive rights. The defendant has, for all practical purposes, copied this; but the plaintiff's exclusive right to it in 1911 is not, to my mind, established.

[2] It is not, however, a wholly unrestricted use of "Circlette" and of the shoe-heel trade-mark which has become open to the public as above. Whoever undertakes to use them must do so in a manner not adapted to lead buyers to mistake his heel protectors for those of the original maker or its successors. He is bound, by some means or other, if he uses the trade-marks, to announce, without giving them undue or offensive prominence, that his are not the product of the plaintiff or its successors. Yale, etc., Co. v. Worcester, etc., Co., 195 Fed. 528, 529, 115 C. C. A. 491. In my opinion, this defendant has not only used the trade-marks, or his substitutes for them, in a manner adapted to mislead in the above respect, but in a manner deliberately contrived for that purpose, as his own evidence shows. If he really intended to make it clear that his were not the plaintiff's heel protectors, he could, of course, have done so very easily. But, just as he has adopted a name and shoe-heel representation copying the plaintiff's in all features most likely to arrest the ordinary attention, yet

205 F.—49

not quite the same, so he has adopted a package and style of label nearly, but not quite, like the plaintiff's, yet possessing all their features most likely to catch the eye of the ordinary observer. The defendant's name appears, it is true, in place of that of the original maker; but the shape and size of the packages, their color, the parts of them covered by the labels, the location upon the labels of the name and shoe-heel representation, the prominence given to the name, the arrangement of the other reading matter on the labels, the division thereof into lines, the arrangement of the lines, and the prominence given by the use of capitals to corresponding words therein, are altogether too nearly like the plaintiff's to permit the conclusion either that they did not mislead or that they were not intended for that purpose. They leave no doubt in my mind of the defendant's intent to trade on the plaintiff's name and reputation.

On the defendant's behalf it is argued that the plaintiff, in continuing to mark its packages "Patented" at the top and in the middle of the label, and "Patented Sept. 8, 1896," near the bottom, after the Frost patent had expired, has been itself guilty of fraudulent misrepresentation, calculated to impose upon the public, such as should induce the court to withhold relief against the defendant's fraud. This defense was not set up in the answer, none of the evidence has been expressly directed to it, and I do not think the mere fact, if it be one, that the plaintiff's labels have continued to read as above since 1909, is sufficient for the conclusion that their use since that time has been fraudulent. As has been stated, the date of the Frost patent expressly appears upon each label.

The plaintiff is entitled to an injunction against the use of packages like those before the court, bearing similar labels, and also to an accounting; and there may be a decree accordingly.