BUFFALO SPECIALTY CO. v. VAN CLEEF et al.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

No. 2159.

1. EQUITY ⊜362—DISMISSAL OF BILL—GROUNDS.

Where, in an action for infringement of a trade-mark or trade-name and for unfair competition, the bill was good, it could not be dismissed on motion, unless the defensive matter in complainant's answers to interrogatories propounded by defendant was so conclusive that it could not be affected by any avoiding evidence in support of the bill, or in support of a replication that might have been filed in the ordinary course of the case.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 758–761; Dec. Dig. ⊜362.]

2. EQUITY ⊜363—DISMISSAL OF BILL—PRESUMPTIONS.

Where, in a suit for infringement of a trade-name under which complainant was selling a tire fluid, the bill did not admit, and complainant's answers to interrogatories did not affirm, that the tire fluid of the particular species sold by complainant was patented, it would be taken, as against a motion to dismiss, that every one was free to manufacture and sell tire fluids, even complainant's, if its formula could be learned, and that many brands under distinctive names and marks were on the market.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 762–766, 768; Dec. Dig. ⊜363.]

3. TRADE-MARKS AND TRADE-NAMES ⊜85—LOSS OF RIGHTS—MISREPRESENTATION.

Complainant manufactured a tire fluid according to a secret formula and sold it under a trade-name. One D. obtained a patent for a vehicle tire, consisting of a combination of a pneumatic tire and a free-flowing

sealing agent within the air chamber. Complainant purchased this patent, and thereafter used, in connection with its tire fluid, a label on which appeared a circle representing a pneumatic tire within which were the words: "Patented U. S. A. Foundation patent No. 578,551." Below the circle were statements that this was the foundation patent, and covered the use of any liquid, semi-liquid, paste, powder, or compound capable of being converted into or used in connection with any liquid, in any pneumatic tire for closing punctures, that plaintiff's tire fluid was manufactured and sold under and by the owner of such patent, and that persons making, selling or using any other such fluid were infringers. *Held*, that complainant was justified in buying the patent to avoid infringing it, and the label in question was not such an abuse of its patent rights as deprived it of its pre-existing property right in its trade-name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. &#9775;&#8212;85.]

4. EQUITY &#9775;&#8212;363—DISMISSAL OF BILL—PRESUMPTIONS.

In a suit for infringement of the trade-name, where neither complainant's bill nor its answers to interrogatories admitted that defendants or the public were ignorant of the true facts concerning the patent, this could not be assumed on a motion to dismiss; but, on the contrary, it would be assumed that the final proofs would show that defendants and the public knew of the relation of the tire fluid to the patented vehicle tire, and never erroneously associated the trade-name of the secret mixture with the combination patent.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 762–766, 768; Dec. Dig. &#9775;&#8212;363.]

5. TRADE-MARKS AND TRADE-NAMES &#9775;&#8212;11—NAMES OF PATENTED ARTICLES.

If, as would be assumed on a motion to dismiss, the patented tire had no generic name, and all pneumatic tires, whether containing a free-flowing sealing agent or not, were made and sold under the marks and names of their manufacturers, the expiration of the patent could not authorize the public to use the trade-name of the unpatented element, under the rule that the expiration of the patent authorizes the use of the name of the patented article, where it has become a generic name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. &#9775;&#8212;11.]

6. TRADE-MARKS AND TRADE-NAMES &#9775;&#8212;11—LOSS OF RIGHTS—MISREPRESENTATION.

That complainant, after the expiration of the patent, used a label on which was a picture of a tire and the words: "Patented U. S. A. March 9, 1897. Patent No. 578,551"—did not deprive it of its right to equitable relief against the piracy of its trade-name and unfair competition; the word "patent" not having been used under such circumstances as to import the assertion of a presently existing monopoly.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. &#9775;&#8212;11.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit by the Buffalo Specialty Company against Noah Van Cleef and others, a copartnership doing business as Van Cleef Bros. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

See, also, 217 Fed. 91.

Albert H. Graves and Charles K. Offield, both of Chicago, Ill., for appellant.

Thomas A. Banning, Jr., and Samuel W. Banning, both of Chicago, Ill., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

BAKER, Circuit Judge. Appellant's bill counted on three wrongs: Appellees' use of appellant's trade-name, "Neverleak," in connection with the manufacture and sale of "tire fluids"; simulation of dress, whereby an intending purchaser would likely be misled; and the actual palming-off of the imitation by false representations and by inducing dealers to effect substitutions.

In each of these respects the bill stated a good cause of action.

Through appellant's answers to interrogatories propounded by appellees certain defensive facts were brought into the record. These, however, pertained only to the use of the word "Neverleak."

Appellees' motion on this state of the record to dismiss the bill for want of equity was sustained, the court being of the opinion that the expiration of a patent owned by appellant brought the use of "Neverleak" within the Singer (Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118) and Castoria (Centaur Co. v. Heinsfurter, 84 Fed. 955, 28 C. C. A. 581 and Centaur v. Marshall [C. C.] 92 Fed. 605) Cases.

[1] Inasmuch as the bill was good, it could not properly be dismissed on motion, unless the defensive matter in the answers to the interrogatories (in effect the same as if admitted in the bill or as if set forth as a complete answer which was demurred to by appellant) was so conclusive that it could not be affected by any avoiding evidence in support of the bill or in support of a replication that might have been filed in the ordinary course of the case. Bronk v. Charles H. Scott Co., 211 Fed. 338, 128 C. C. A. 17, and cases there cited.

With respect to rights in the word "Neverleak" the bill alleged that appellant in 1893 began making a tire fluid according to a secret formula that has never been disclosed in a patent or otherwise; that appellant invented the word "Neverleak" and applied it to the product; that appellant's product was so meritorious that the compounding and marketing thereof grew to vast and highly profitable proportions; and that from 1893 to the filing of the bill in 1914 the trade and the public recognized "Neverleak" as appellant's trade-name that identified the product and pointed to appellant as maker and seller.

In answers to interrogatories appellant admitted that a patent, No. 578,551, was issued on March 9, 1897, to one Duryea, on his application filed December 28, 1891; that appellant in 1898 purchased the patent; that the patent expired by law on March 9, 1914; that from 1898 to March 9, 1914, appellant used label Exhibit A; that from March 9, 1914, to the filing of the bill on April 10, 1914, appellant used label Exhibit B; that the labels had been included in advertisements in newspapers and magazines; and that during the life of the patent appellant had sued several alleged infringers.

Duryea's patent is entitled "Vehicle Tire." In the specification he

disclosed that "the invention relates to pneumatic tires for vehicle wheels, the object being to render tires self-healing—that is to say, adapted automatically to close a puncture." All the seven claims, with varying degrees of specificness, are for combinations of a "pneumatic tire" and a "free-flowing sealing agent within its air chamber."

Across the top of label A appear the words "Neverleak Tire-Fluid" in large capital letters. Below this and at the center of the label is a circle, representing a pneumatic tire. Within the circle is the statement in smaller capital letters: "Patented U. S. A. Foundation patent No. 578,551." Around the upper half of the circumference of the pictured tire and in still smaller capital letters is the legend, "Automatically Closing Punctures." Below the circle and in ordinary newspaper type an explanation and a warning are printed. Explanation:

"This is the foundation patent and covers the use of any liquid, semiliquid, paste, powder or compound capable of being converted into or used in connection with any liquid, in any pneumatic tire for closing punctures."

Warning: ·

" 'Neverleak tire fluid' is manufactured and sold under, and by the owner of, said patent, the Buffalo Specialty Company. All persons, firms or corporations making, selling or using any other tire fluid, powder or compound, are infringers of said U. S. patent. Buffalo Specialty Company."

Label B is the same with two exceptions. For the former statement within the pictured tire this substitute is given: "Patented U. S. A. March 9, 1897. Patent No. 578,551." In the place of the explanation and warning the following matter is printed:

"Net weight, four ounces. Price, 25 cents. This tube treats one tire. Buffalo Specialty Company."

Appellant's use of "Neverleak" as a trade-name is to be considered during three periods.

[2] From 1893 to 1898. As the bill establishes, appellant founded and was building a valuable business in making and selling a "tire fluid," and the public had come to recognize "Neverleak" as the word (whether primarily a trade-mark or secondarily a trade-name is immaterial) that pointed to the origin and identity of the particular product. "Tire fluid" was the name of the genus, and "Neverleak" was the name of appellant's species. Since the bill does not admit, and the answers to interrogatories do not affirm, that the genus or appellant's species was patented, or that no other makers were in the market, it must be taken as against the motion to dismiss that every one was free to manufacture and sell tire fluids, even appellant's, if the secret formula could be learned, and that many brands · under distinctive names and marks were on the open market during this period. So it is evident that appellant acquired a property right in the use of "Neverleak," and still has it, unless it has been forfeited by appellant's subsequent conduct.

[3] From 1898 to March 9, 1914. Just prior to the beginning of this period appellant was confronted with a peculiar situation. Many tire fluids were on the market, among them appellant's "Neverleak."

Duryea had obtained a patent on a "vehicle tire," comprising a combination of any "pneumatic tire" and any "free-flowing sealing agent within its air chamber." If appellant or any other maker should sell tire fluids for the purpose of having them combined with pneumatic tires, and such would clearly be the purpose, he would be a contributory infringer of the Duryea patent on vehicle tires. Duryea's application was filed in 1891. And since no public use of Duryea's combination earlier than the inferential use by tire owners of appellant's tire fluid in 1893 is suggested by the record, Duryea's patent must stand here as impregnable. With such a cloud overhanging its business, appellant was justified in buying the patent. Appellees do not deny this, but insist that appellant has so abused its patent right that it has lost its pre-existing property right in its trade-name "Neverleak."

In our judgment the explanation in label A is clear and unambiguous. Patent No. 578,551 *was* the foundation patent and it *did* cover the use of any liquid in any pneumatic tire for closing punctures. It was proper, even if unnecessary, in the first sentence of the part we have entitled "Warning," to assure purchasers of "Neverleak" that they were authorized to use it in pneumatic tires. Fair notice to rival concerns was given by the concluding sentence that, if they should continue to make, sell, or use "tire fluids" (for the purpose to which such fluids had always theretofore been put) they would infringe the combination patent. And there is nothing to show that appellant's prosecutions of alleged infringers were unfair to them, or to the public, or to appellees.

[4] Taking the label as a whole, we think its meaning is plain; but, even if ambiguities could be found in segregated parts, the motion to dismiss should not have prevailed. We cannot accept assertions in appellees' brief, outside the record, that appellees and the public were misled by the supposed ambiguities. In neither the bill nor in the answers to interrogatories does appellant admit appellees' or the public's ignorance of the true state of facts respecting the patent. We therefore may assume that the final proofs would show, as appellant, also outside the present record, declares, that appellees were former employés of appellant and knew all about the relation of the tire fluid "Neverleak" to the subsequently patented "vehicle tire," and likewise that dealers and the general public never erroneously associated the trade-name of appellant's secret liquid mixture with the combination patent on a vehicle tire.

[5] No generic name for the patented tire appears in the record. Presumably, therefore, all pneumatic tires, whether containing a "free-flowing sealing agent" or not, were made, sold, and used under the several marks and names of their manufacturers. This condition with respect to a generic name for the patented tire is very far from establishing that the pre-existing trade-name of one unpatented element became the generic name of the patented combination. So the Singer and Castoria Cases do not apply. Compare Batcheller v. Thomson, 93 Fed. 660, 35 C. C. A. 532; De Long Hook & Eye Co. v. Francis Hook & Eye Co. (C. C.) 139 Fed. 146; Prest-O-Lite Co. v. Davis, 215 Fed. 349, 131 C. C. A. 491; Searchlight Gas Co. v. Prest-O-Lite Co.,

215 Fed. 692, 131 C. C. A. 626; Avenarius v. Kornely, 139 Wis. 247, 121 N. W. 336.

[6] From March 9, 1914, to April 10, 1914. No objection is urged against label B except that the words "Patented U. S. A. March 9, 1897. Patent No. 578,551" are printed within the circle of the pictured tire. Appellees and the public were legally chargeable with knowledge that the patent had expired, the date being given. All that can be said from the face of the label is that appellant needlessly gave true information of the fact that prior to March 9, 1914, the patent was in force, and inferentially that it had been owned by appellant and used in some way not disclosed by label B. Full proofs might establish a business propriety in appellant's making as little change as possible in its previously well known and rightfully used business dress. At all events pirates cannot keep their victim out of equity on their cry of "unclean" simply by showing a use of the word "patent" under circumstances that fail to import an assertion of a presently existing monopoly. Frank W. Witcher Co. v. Sneierson (D. C.) 205 Fed. 767; Marshall v. Ross, L. R. 8 Eq. 651; Cheavin v. Walker, L. R. 5 Ch. D. 850; Morgan v. McAdam, 36 L. J. Ch. D. 228; Ransome v. Graham, 51 L. J. Ch. D. 897.

Concerning simulation of dress. Appellant exhibited with its bill a display box of appellees' tubes of tire fluid. The center of attraction is the word "Neverleak." Similarities in the make-up and markings of containers and display boxes are observable. There are also dissimilarities. A comparison induces us to believe that appellees intended to subordinate the dissimilarities and intended purchasers to be deceived by the similarities into buying the wrong "Neverleak." If appellees had a contrary intention, or if their intended deceptive means were in fact inefficient, the bill does not so admit, nor do the answers to interrogatories so prove.

With the defensive matter respecting appellant's use of the word "patent" in connection with its trade-name "Neverleak" disposed of as insufficient for any defensive purpose, no basis for the motion to dismiss exists as against the bill's charge of actual palming-off by fraudulent representations.

The decree is reversed, and the cause is remanded for proceedings consentaneous to this opinion.