THAYER & CHANDLER et al. v. WOLD.

(Circuit Court, N. D. Illinois, E. D. January 19, 1906.)

No. 27,398.

1. PATENTS—VALIDITY—OPERATIVENESS OF DEVICE.

It requires only slight evidence of successful operation to avoid the defense of inoperativeness of a patented device.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 34, 39, 40.]

2. SAME—INFRINGEMENT—AIR BRUSHES.

The Burdick patent, No. 474, 158, and the Wold patent, No. 555,669, both for air brushes, held valid and infringed.

In Equity. On final hearing.

Dwight B. Cheever, for complainant.

Banning & Banning, for defendant.

KOHLSAAT, Circuit Judge. Defendant is charged in this suit with infringement of claims 1, 2, 8, and 9 of patent No. 474,158, granted to C. L. Burdick, May 3, 1892, for an air brush, and claims 6 and 8 of patent No. 555,669 issued to defendant herein March 3, 1896, likewise for an air brush. The claims read as follows:

Patent No. 474,158.

"1. The combination, in air brushes, of an open receptacle for ink or paint conical at one end and perforated for the delivery of said ink or paint, a valve to close the said perforation and adapted to be operated by hand, a cap covering the conical end of the body and forming an air-space between, and perforated in line of the said delivery, and means for connecting the said air-space with a source of supply for compressed air, substantially as described.

"2. The combination, in air brushes, of a receptacle for ink or paint, perforated for delivery thereof, and open to atmospheric pressure from the rear, a finger-valve for the said perforation, and a suction nozzle forward of the perforation, substantially as described.

"3. The combination, in air brushes, of a paint receptacle perforated for delivery, a valve for the perforation, a suction nozzle forward of the delivery, a connection between the nozzle and compressed air source a valve for the same connection, and a finger lever hung for two movements, substantially as described, whereby the operator's finger may make one movement to control the air supply and another movement to control the paint delivery."

"9. The combination, in air brushes, of a receptacle for paint having a delivery aperture, a suction nozzle in front thereof, an air-tube connecting with the nozzle, valves for the delivery aperture and air-tube, and an operating lever fitted to play both longitudinally and transversely to the body and connected with the valves, substantially as described."

Patent No. 555,669.

"6. In an air brush, the combination with a needle, of a tube surrounding the same, an annular opening for the paint being formed between the needle and the tube, a second tube surrounding the first, an annular opening for the air being formed between the two tubes, the end of said first mentioned tube being extended beyond the end of the second-mentioned tube whereby the annular opening for the paint occupies a position in advance of the annular opening for the air; substantially as described."

"8. In an air brush, the combination with a needle, of a tube surrounding the needle, means for adjusting the needle to cause the same to project from the tip a greater or less distance, and a cap extending beyond the extreme adjustable position of the needle to prevent the point of the needle from coming in contact with the surface to be painted; substantially as described."

An air brush may be defined as a combination device whereby liquid colors may be atomized by a blare of compressed air and blown upon a suitable surface so as to form any desired representation, such as a picture, according to the will and skill of the manipulator. The defenses raised are: (1) Noninfringement; (2) that the device of the first-named patent is inoperative; (3) that claim 6 of the Wold patent is anticipated by complainants' own device, Exhibit No. 367; (4) that claim 8 of the Wold patent is void as being inoperative, ambiguous, and anticipated.

While there are some structural differences between the defendant's brush and that of the patents in suit, such as the several locations of the color reservoirs, and the fact that in the patents in suit the needle element of the color supply valve is movable within a stationary tube which delivers the coloring matter to the compressed air blast, while in defendant's device it is the tube which is movable and the needle is stationary, yet, if the patents in suit are to be held primary, these variations would be no more than the use of equivalents, and therefore undecisive. Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540; Red Jacket Mfg. Co. v. Davis, 82 Fed. 432, 27 C. C. A. 204; Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375.

The defense of anticipation of the Burdick patent is based upon two patents in the prior art, patent No. 324,005, granted to D. H. Burrell on August 11, 1885, for a "Furnace for Burning Liquid and Gaseous Fuel," and patent No. 426,040, granted to J. B. Moore on April 22, 1890, for an "Injector Oil Burner." Each of these patents shows concentric color and steam nozzles, also a needle valve in the color tube, as well as coincident delivery of oil and steam, for the purpose of atomizing the oil supply. Both of them pertain to furnaces and the industrial arts. Both call for stationary devices and heavy pressure or blasts. In theory of operation they closely resemble that of the patents in suit. In matter of application, they would seem not to anticipate the delicate devices used in the fine arts for creating pictures and other representations such as those set out in the record. It is indeed possible to reason from a Corlis engine to a watch spring, but the journey will lead the mind over an uncharted highway and across unbridged waters. So, here, the adaptation of the idea of the oil distributing device to the pencil sized air brush seems to me to involve several inventive steps. Moreover, the oil and steam supply are controlled by an arrangement of screw turning handles which

must each be independently worked, while in the Burdick patent a slight movement of the thumb operates both supplies. This device is not new, but it is new in the combination claimed. The defense of double use would seem not to be properly advanced. There are in the record several alleged anticipatory patents in the air brush art, as, for instance, that of Walkup, 1885, shown as Exhibit "Rockford Air Brush." This is a clumsy implement, in which the compressed air blast and the color supply contact with each other at substantially right angles. There are other differences, but these sufficiently describe the differences between the two for this proceeding. In an operation which requires niceness and accuracy of touch, there is no comparison to be made between the two.

We are then led to consider the only serious contention as to the validity of patent No. 474,156, i. e., its alleged inoperativeness. It is the theory of defendant that the language of the claims calls for a brush in which the air discharge aperture shall be in line and concentric with, and an appreciable longitudinal distance in front of the color discharge. He further insists that such an adjustment will clog up the color discharge, thereby making the brush inoperative. The defendant's experts contend that the air blast and the color discharge should coincide, or else that the color discharge should be in advance of the air discharge. A careful reading of the claims does not, in my judgment, limit them to the construction placed on them by defendant's experts. They do require the compressed air discharge to be in front of the color discharge. This, however, does not necessarily call for any appreciable distance between the two. The air must be in front of the color tube. The air space spoken of must be that space occupied by the blast. The suction nozzle must be that element of the device which succeeds the air discharge. That part of the drawings which seems to indicate the defect, if it be one, which defendant asserts, is not accurate, perhaps, but serves to illustrate the novel idea. The distances between the two are, in any case, minute. One cannot see them with the naked eye. Exhibit 367 discloses what complainant insists is the device of this patent, though it is true defendant says it is not made in accordance with the patent. Whatever may be said of the Burdick patent, it is in evidence that brushes made under it are capable of being used to some extent. Complainants show that they have placed a number of them on the market and have received numerous testimonials as to their value. Defendant's evidence shows that they can be made to do only a limited quality of work. If the difference between the work of what defendant considers an operative brush and that of the patent is one of degree only, that fact does not entitle defendant to treat the device as inoperative and void. If the inventor's idea is there, it would be, at best, only a matter of mechanical skill to perfect it. It must, in the nature of it, be perfected by experiment.

It requires only slight evidence of successful operation to avoid the defense here set up. The defendant himself secured the Wold patent herein litigated. He did so after several years work with the brush of the Burdick patent. He describes his brush as containing

improvements whereby the longitudinal movement of the needle is more readily effected. This Wold patent places the color, discharge in front of the air blast. This, defendant admits, would be operative. Still Wold calls it an improvement. It therefore seems clear that defendant's device is an infringement of the brush of the patent in suit, even though that may have been defective, since it must be held to be in a sense primary. Walker on Patents, § 30, and cases cited. There would seem to be some ground for the contention of defendant that the Wold patent is anticipated by the Burdick patent. That too involves only a question of degree. However, I do not regard it nec- essary to dispose of that matter, in view of the foregoing facts.

Whether or not some of the claims of the patents in suit are so ambiguous as to be void seems to be a matter of dispute between the experts. Complainants' experts claim to understand them, while de- fendant's do not. There is no rule which invalidates a patent because some persons skilled in the art cannot find sufficient in the claims to enable them to make and use the device. In the state of the evidence as it stands on this point, the court must resolve the dilemma in favor of the patent.

Complainants may prepare a decree in accordance herewith.