GALLY *v.* THE COLT'S PATENT FIRE-ARMS MANUF'G Co. and others.

*(Circuit Court, D. Connecticut. February 25, 1887.)*

1. PATENTS FOR INVENTIONS—LICENSE TO MANUFACTURE AND SELL—CONSTRUCTION.

By a contract in 1877 between plaintiff, who was the patentee of a printing-press and of a subordinate improvement thereon, and defendant, the defendant agreed to manufacture presses for the plaintiff at agreed prices, keeping enough on hand to meet the demands of the market, and the plaintiff agreed to buy of no one else than defendant. Defendant was to have a license to sell, paying a royalty. "the conditions of sale" by defendant to be the same as the conditions under which plaintiff should sell, "so long as he continues in the business" in New York. Afterwards a modified agreement as to prices was made, to last two years, at the end of which time the defendant should "be obliged to continue to furnish the presses at the prices" fixed by the original contract. Further than shown, no time was specified in the contract. Upon a motion for a preliminary injunction, *held* (not as a final decision but for the purposes of the motion) that, after the expiration of the patents on the press in 1886, but not on the improvement, being after the expiration of the two years named in the modified agreement, defendant was not obliged longer to make presses under the contracts, either with or without the improvement; that he could sell presses for plaintiff without the improvement without restriction, and without paying a royalty; but that, as to presses with the improvement, he could not undersell plaintiff.

2. TRADE-MARK—DESIGNATION OF PATENTED ARTICLE—EXPIRATION OF PATENT.

A patented printing-press was called by the patentee the "Universal," and the presses were stamped with that name, and the names of the manufacturers, who made them for the patentee or his licensees. *Held* that, after the expiration of the patent, the patentee was not entitled to be protected in the use of the word "Universal" as a trade-mark.

In Equity. On motion for injunction.

*Martin J. Keough* and *T. E. Steele*, for plaintiff.

*William A. Redding* and *Alvan P. Hyde*, for defendants.

SHIPMAN, J. This is a motion for an injunction *pendente lite*. The suit was brought by Merritt Gally, a citizen of New York, against the Colt's Patent Fire-arms Manufacturing Company, a citizen of Connecticut, and John Thomson, a citizen of New York. The facts, so far as

they are necessary to be stated upon this motion, are as follows: In 1869, the plaintiff obtained four letters patent of the United States for improvements in printing-presses. In the first patent the press is called the "Universal Printing Machine;" and it has been known since it came into use as the "Universal Press." In May, 1871, the plaintiff obtained another patent for a "chase-latch," a subordinate improvement. Between February, 1872, and September, 1873, about 500 Universal Presses were made and sold by Hamilton & McNeal, of Rochester, New York, as exclusive licensees of the plaintiff. They having failed in business, E. V. Haughwont & Co. became the exclusive licensees, for whom, before the spring of 1876, the defendant corporation manufactured 352 presses. These licensees also became financially embarrassed, their license was terminated, and, between March, 1876, and January 17, 1877, the defendant made for the plaintiff 34 patented presses, each of which, and also each one of the 2025 presses hereinafter mentioned, had two plates, upon one of which were engraved the words, "Built at Colt's Armory, Hartford, Ct.," and upon the other were engraved "M. Gally's Universal. Patented,"—with the dates of the patents. The Hamilton & McNeal machines were stamped, "Universal. Manufactured by Hamilton & McNeal,"—with the dates of the patents. The Haughwont machines were stamped, "Universal. Manufactured by E. V. Haughwont & Co., by the Colt's Pt. F. A. Mfg. Co. M. Gally's patents,"—and the dates thereof.

On January 17, 1877, the plaintiff and defendant corporation entered into a written memorandum of agreement, wherein the defendant agreed "to make Universal printing-presses, of the invention of the said Gally, at the following rates," and, after specifying the rates and the credits for discounts and for royalty, further agreed "to keep a sufficient number of presses on hand to meet the ordinary demands of the market." Gally agreed to purchase from the defendant, and from no other party, Universal presses of his patented invention, at the specified prices, in such numbers as the business would require, and that he would license the defendant to manufacture and sell the said presses under his patents; the conditions of sale of the said presses by the defendant to be the same as the conditions under which the plaintiff sold, "so long as he continues in the business of selling the said presses in the city of New York:" provided, however, that a specified royalty on sales made by the defendant was to be credited, which royalty was different from that upon the machines manufactured for Gally. On October 11, 1877, a modified agreement in regard to prices was made, which also provided as follows:

"This agreement is in no respect to affect the contract of January 17, 1877, above referred to, except in the matter of prices as given above, and the prices herein settled shall last at least two years, at the end of which time this company shall be obliged to continue to furnish the presses at the prices given in the contract of January 17, 1877, and of the sizes therein named, should it be found necessary to make any change in prices."

Between January 17, 1877, and November 23, 1886, when the last of the patents of 1869 expired, the defendant made and delivered to the plaintiff 2,004 presses, and made and sold to other parties than Gally

21 presses.   The prices remained the same as were specified in the agreement of October 11, 1877, until November 22, 1886, when the plaintiff was notified that, on all presses delivered after November 23d, the prices specified in the original contract would be changed.   This change included presses ordered on November 18th, 19th, and 20th, but did not apply to other unfilled orders which had been previously given.   Very soon thereafter, probably in pursuance of arrangements previously made with Thomson, the defendant corporation entered upon its own account upon the manufacture of the Universal press, containing the invention of the expired patents, and a device in lieu of the chase-latch, and advertised the press under the name of the Colt's Armory Universal Printing-press, or Universal Press.   John Thomson, who had been the general manager of the plaintiff's printing-press matters from January 1, 1880, until April, 1886, when he was discharged by the plaintiff, became the manager of this part of the defendant corporation's business in New York city.   Since November 23, 1886, the defendant has made and sold seven presses with the Gally chase-latch; has allowed the plaintiff the royalties payable upon said presses under the original agreement; and has made and sold nine presses not containing said latch.   The license has not been revoked.   The machinery, tools, and patterns pertaining to the business, and which cost a large sum, belong to the defendant corporation.   The plaintiff registered in the patent office on March 5, 1886, the word "Universal" as a trade-mark for printing and embossing presses, and in his application stated that he had used the word continuously in his business since about the middle of 1869.

The bill charges the Colt's Company with a violation of its contracts with the plaintiff, and charges both defendants with an infringement of his trade-mark.   It alleges—*First.* That the defendant company has violated the contracts made with the complainant in these particulars: (*a*) It failed, since November 22, 1886, to make and deliver to the complainant presses at the modified prices mentioned in the letter of October 11, 1877.   (*b*) It raised, since November 22, 1886, the prices from the modified prices to those named in the agreement of January 17, 1877. (*c*) It accepted from the complainant certain orders for presses prior to November 22, 1886, at the modified prices, and afterwards refused to fill the orders at prices less than those specified in the agreement of January 17, 1877.   (*d*) It failed to keep a sufficient number of presses on hand to meet the ordinary demands of the market, so that the complainant was unable to get from it presses necessary to supply his customers.   (*e*) It, in combination with John Thomson, solicited orders since November 22, 1886, for the sale of presses, and for that purpose established an office and sales-room in the city of New York, and engaged generally in the sale of presses in competition with the complainant, at prices and upon conditions other than the prices and conditions upon which the complainant could sell presses.   (*f*) It offers to sell presses in the open market at the modified prices specified in the letter of October 11, 1877, and yet refuses to sell the presses to the complainant at such modified prices.   (*g*) It is using the patterns, tools, ma-

chinery, and plant (in which the complainant alleges to have invested a large sum of money) in manufacturing presses and parts of presses for parties other than the complainant, and for sale in open market in competition with complainant. *Second.* That the defendant company combined, confederated, and conspired with John Thomson to injure and destroy the business of the complainant in these particulars: (*a*) It entered into secret negotiations with John Thomson to devise some plan to evade its obligations to the complainant under the agreements mentioned. (*b*) It acted in collusion with John Thomson to secure a nullification of the complainant's patents by introducing certain modifications in the presses. (*c*) It conspired with John Thomson to bring collusive suits, for the purpose of defeating the complainant's patents, and to get control of his business, so that the defendants might engage in the business of selling the presses, and undersell and ruin the complainant's business. (*d*) It employs and uses the name of John Thomson, as representative, agent, or manager, in a manner similar to that heretofore used by the complainant, to mislead the public and the trade, and thus injure the complainant. *Third.* That the defendants have infringed upon the complainant's trade-mark, consisting of the word "Universal" on printing-presses, in this particular: (*a*) They have made and sold printing-presses with the word "Universal" affixed thereto, in Hartford and New York city.

The complainant's prayers in his bill of complaint are: (1) To compel defendants to answer; (2) For perpetual injunction, to enjoin defendants from manufacturing or selling presses or parts of presses; (3) for perpetual injunction to enjoin defendants from using the word "Universal" in connection with the manufacture and sale of printing and embossing presses, and for an account of profits; (4) for an ascertainment of damages; (5) for an account of all presses made and sold by defendants in violation of the agreements, and to compel a payment to complainant of all moneys received by defendants on account of such sales; (6) for an injunction generally against defendants making or selling presses or parts of presses, or using the alleged trade-mark. In this motion, the plaintiff asks for a provisional injunction of the same character that is sought for a perpetual injunction.

The defendants object that, as Thomson and Gally are citizens of the same state, the court has no jurisdiction. This would be true, if Thomson was a necessary party to the suit, but the controversy is really with the Colt's Company, for whom he is an agent, and grows out of its contract relations with Gally. Thomson has no important place in the suit, which should be forthwith dismissed as to him. *Horn* v. *Lockhart*, 17 Wall. 570; *Watson* v. *Evers*, 13 Fed. Rep. 197. The defendant corporation also insists that a court of equity has no jurisdiction with respect to so much of the bill as asks an injunction to restrain acts which, it is alleged, are being done in violation of a contract in regard to personal property, where the nature of the contract is such that specific performance cannot be enforced. The subject is discussed in a very able manner by Judge LOWELL in *Singer S. M. Co.* v. *Union Button-hole Co.*, 1

Holmes, 253; but, in my view of the facts in this case, a decision of the question is not necessary upon this motion. The plaintiff seeks to restrain the defendant company from making and selling to any person except himself, and only upon the terms of the supplementary agreement, Universal presses, with or without the chase-latch.

The first question in this part of the case is whether the defendant corporation is to be enjoined against selling, in the market generally, Universal presses which contain only the devices described in the expired patents. I see nothing in the contract of January 17, 1877, which forbids the Colt's Company from selling, or which implies that it is not to sell to any person the "Universal press" after the patents therein have expired. When the public has a right to manufacture and sell, it also has a right to do the same at its own price, and there can be no reasonable question that it can now sell, upon its own account, the press without the patented chase-latch.

The second question is whether the defendant corporation must sell to Gally presses with the chase-latch, at the prices of the supplementary contract. Neither the original nor the supplementary contract mentions the time during which the obligation of the Colt's Company to furnish presses to Gally is to continue; and the intention of the parties as to the duration of such obligation can only be inferred from the general character and provisions of the contracts and the license. Without deciding the question, I am inclined to the opinion that, when the parties entered into the contract, they were only regarding the time during which the press was to be protected by the patents therein, and that the defendant corporation did not undertake to continue to furnish presses to the plaintiff beyond the expiration of that period, and by the patents I mean the patents of 1869. The sentence commencing "the conditions of sale of the said presses by the Colt's Co.," refers to the sales of presses under the license, and not to sales of presses, which are open to the public. But if the Colt's Company sells, under its license, to persons other than Gally, a press with the chase-latch, I think that, under the provisions of the original contract, it should not undersell Gally, but sell upon his terms.

The name "Universal," or "Universal printing-press," was adopted, at the time the patents were issued, to designate the patented press. It was not a trade-mark of the plaintiff which became identified with his workmanship, and indicated that the press was of his manufacture, but was a name which characterized the press which he invented. Any manufacturer, who uses the name now, does so to show that he manufactures the Gally press, which he may rightfully do, and does not represent to the public that it is getting any skill or excellence of workmanship which Gally possessed, and does not induce it to believe that the presses are manufactured by the plaintiff. The cases of *Filley* v. *Child*, 16 Blatchf. 376; *Singer Manuf'g Co.* v. *Stanage*, 6 Fed. Rep. 279; and *Gray* v. *Taper Sleeve Pulley Works*, 16 Fed. Rep. 436,—contain the reasoning and the proper distinctions upon the subject.

The motion is denied.