## WHITE v. HUNTER.

### (Circuit Court, E. D. Virginia.  March 25, 1891.)

1. PATENTS FOR INVENTIONS—CULTIVATING PLOWS—NOVELTY.
   Letters patent No. 313,394, issued March 3, 1885, to Lewis B. White for an improvement in cultivating plows, consisting of a share, and a mould-board divided into two parts, one of which may be used alone in cultivating certain crops, is for a novel and useful invention.

2. SAME—ANTICIPATION.
   This patent was not anticipated by the inventions covered by letters patent 151,744, 164,951, 171,008, or 236,743.

3. SAME—INFRINGEMENT—INJUNCTION—EVIDENCE OF ACQUIESCENCE.
   To warrant a preliminary injunction against infringing a patent, it is sufficient proof of acquiescence to show that for about six years immediately following the issuance of the patent plaintiff had manufactured the articles in large quantities, had constantly and publicly proclaimed his exclusive right to make them, had sold many thousands of them to dealers interested in contesting his right, none of whom have questioned it, and that defendant himself acquiesced in such right until a very recent period.

4. SAME.
   On a question whether defendant had infringed plaintiff's patent, the former's confidential clerk and book-keeper testified that defendant had made at least 101 plows embracing the patented parts.  It further appeared that he had manufactured a casting identical with one part of plaintiff's plow, so that it would fit upon it, and that this was made with a view to be used interchangeably with like pieces on plaintiff's plow.  Defendant also advertised that he made castings for all the leading plows, enumerating that of plaintiff among others.  Held sufficient to show an infringement.

In Equity.  Application for injunction against infringing a patent for cultivating plows.

*Whitehurst & Hughes*, for plaintiff.

*J. B. Sener* and *S. Ferguson Beach*, for defendant.

HUGHES, J.  Whether the preliminary injunction shall be granted in this case depends upon three questions, viz.: (1) Whether the plow which is the subject of the suit is a patentable implement; (2) whether the right of the patentee to the exclusive use of it was acquiesced in for a considerable period of time by the public, and especially by those of the public who were interested in denying the right; and (3) whether the defendant has actually infringed the plaintiff's right.  The plow under consideration is known as the "Stonewall Cultivating Plow."  It is chiefly used and prized in the cultivation of cotton and of ground peas or peanuts.  The plow was patented in March, 1885, six years ago; the certificate being numbered 313,394.  The parts of it in controversy in this case are the share and the mould-board,—the latter divided into two complementary parts.  In the cultivation of cotton all these pieces are used; in that of peanuts, one part of the mould-board only is usually used at a time,—the two parts alternately.  These parts are fully and accurately described in the claim of the patentee, Lewis B. White, accompanying the certificate, in paragraphs 2, 11, and 12, and need not be repeated here.

I think the combination of devices here described, and also the form and structure of the devices in some of their parts, are novel, and con-

stitute a very useful instrument in the cotton and peanut cultivation. The usefulness of the plow is attested by the large number of them called for by the public, and by the fact that the defendant advertises that he manufactures and can furnish them in any amount.

The defendant, to maintain his contention that the Stonewall plow, in respect to the share, the socket by which it is fitted upon the toe of the standard, and the double mould-board is not patentable, produces the opinion under oath of Mr. Ellis, a patent lawyer in Washington, in which it is insisted that these devices have been anticipated by patents 151,744, 164,951, 171,068, and 236,743. I have very carefully compared the devices thus severally patented with those of the Stonewall cultivating plow, and am clearly of the opinion that those senior patents are only apparent anticipations of the parts of the Stonewall plow under consideration, and that these parts are a material improvement, if not in the general principle, yet very decidedly in their details of structure and method of combination, over the earlier devices. Therefore, I am of opinion that the Stonewall cultivating plow is a patentable invention of a highly useful instrument, and that it was not anticipated by patents Nos. 151,744, 164,951, 171,068, and 236,743.

On the second point, whether there has been an acquiescence in the validity of the patent long enough to justify the court in granting a preliminary injunction, in advance of any formal adjudication of the question, the facts seem to be as follows: The patent was issued March 3, 1885. The patentee's firm have been manufacturing the plows for sale ever since in large quantities, and have constantly and publicly proclaimed their exclusive ownership of the plows, of the patent for them, and of the right to manufacture them; that they have been sold by thousands to purchasers and to dealers interested in contesting his right in Virginia and other states; that all have acquiesced in, and none questioned, his right to the patent, and to the exclusive right of selling and manufacturing the plows, the purchasers being not only farmers, but dealers in plows; and that the defendant himself has acquiesced in his rights in the premises until a very recent period. I cannot but regard the case of acquiescence as conclusively made out by the evidence submitted, and must so hold.

On the third and last point, whether the defendant has infringed and is infringing this patent, the evidence is as follows: W. L. Burrus, confidential clerk and book-keeper of the defendant, testified that the defendant, who is a manufacturer of plows on a large scale, has manufactured as many as 101 of the plows embracing the pieces constituting the plow patented to plaintiff under certificate 313,394. It also appears in evidence that the defendant manufactures individual pieces of plow castings that are so identical with the corresponding pieces of the Stonewall plow as to fit on that plow, and are manufactured with a view to being used interchangeably with like pieces on that plow. It is also shown in evidence that by an advertising circular the defendant advertises to the public that he makes castings of all the leading plows, especially enumerating, among others, those for the Stonewall cotton plow. It seems

to me perfectly clear that these facts constitute an infringement. I will sign an order for a preliminary injunction.

This injunction was perpetuated at the final hearing, and there was no appeal.