SEEGER REFRIGERATOR CO. v. WHITE ENAMEL REFRIGERATOR CO.

(Circuit Court D. Minnesota, Third Division. April 9, 1910.)

**1. PATENTS (§ 283\*)—SUIT FOR INFRINGEMENT—INJUNCTION.**
    The fact that the defendant in a suit in equity for infringement of a patent has ceased infringement does not defeat complainant's right to an injunction, where defendant contests the validity of the patent.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 283.\*]

**2. PATENTS (§ 328\*)—INFRINGEMENT—REFRIGERATOR.**
    A preliminary injunction granted restraining infringement of the Quinn patent, No. 539,009, for a refrigerator, on prior adjudications of validity and infringement by the refrigerator made by defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** PATENTS (§ 185*)—NATURE OF RIGHTS SECURED BY PATENTEE—USE OF NAME
A patent does not give the right to any particular name for the patented device.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 185.*]

**4.** TRADE-MARKS AND TRADE-NAMES (§ 3*)—RIGHT TO EXCLUSIVE USE.
A patentee cannot by applying to his device a word which is descriptive only acquire the exclusive right to use such word as against another maker of a device which does not infringe his patent, of which the word is equally descriptive.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

**5.** TRADE-MARKS AND TRADE-NAMES (§ 93*)—EXCLUSIVE RIGHT TO NAME—EXTENT OF USE.
Evidence considered, and *held* insufficient to show that the word "Siphon" had become identified by the public with refrigerators made under the Quinn patent, No. 539,009, to such extent as to entitle the owner of such patent to a preliminary injunction to restrain another manufacturer from using the words "Siphon" or "Siphon System" or "Syphon" or "Syphon System" in connection with its refrigerators.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

Suit in equity by the Seeger Refrigerator Company against the White Enamel Refrigerator Company. On motion for preliminary injunction. Motion granted in part.

Wetmore & Jenner and How, Butler & Mitchell, for complainant.

Lothrop & Johnson, Fish, Richardson, Herrick & Neave, and Davis, Kellogg & Severance, for defendant.

WILLARD, District Judge. This is a motion for a preliminary injunction in a patent case. The complainant asks that the defendant be enjoined (1) from making or selling refrigerators embodying the invention covered by the Quinn patent, No. 539,009; and (2) from using the word "syphon" in advertising any refrigerators of any kind which the defendant may make or sell.

The validity of the Quinn patent has been upheld by the Circuit Court for the District of New Jersey in the case of Seeger Refrigerator Company v. American Car & Foundry Company, 171 Fed. 416, and the decree of the Circuit Court in that case has been affirmed by the Circuit Court of Appeals for the Third Circuit in a decision filed November 27, 1909. 178 Fed. 278. The complainant in that case is the complainant in this case. The infringing articles used by the American Car & Foundry Company were furnished to it by the defendant in this case. The defendant in that case relied upon the Ames patent, No. 625,309, May 23, 1899, which is owned or controlled by the defendant in this case. Diagrams showing the structure of these two patents are found in the opinion of the Circuit Court of Appeals. Upon the question as to the validity of the patent no new evidence of any importance has been submitted upon this hearing. The infringement relied upon in this case is the infringement proven in the other case.

It is claimed, however, that as soon as the decision of the Circuit Court in the American Car & Foundry Company Case was announced,

on June 21, 1909, the defendant in this case at once ceased to manufacture and sell devices under the Ames patent which were held to be infringing structures, and has not since the month of June last manufactured or sold any such devices or any infringing device. It is admitted by the complainant in this case that the structure which the defendant is now manufacturing, called its "1910 device," is not an infringement. The defendant, however, upon this motion has contested the validity of the Quinn patent, and claims that it should be held that that patent is invalid. Under these circumstances, the claim of the defendant that it has ceased manufacturing or selling the infringing device cannot prevent an injunction, and a temporary injunction will. issue as prayed for in the complaint, so far as the sale and manufacture ı are concerned.

The most important branch of the case relates to the second part of the prayer for relief which has to do with the use of the word "Syphon." The precise claim of the complainant upon this point is stated in the brief presented by Mr. Mitchell, as follows:

"If a word has been adopted and used as descriptive of a patented article to such an extent as to become the identifying and generic name of the patented article, the patentee has an exclusive right to the use of that name during the life of the patent, and the use of the name by others to describe articles resembling the patented article, whether or not infringements, is a fraud upon the public and upon the patentee, and will be enjoined. It is entirely immaterial whether the word was arbitrarily coined or applied, or whether it is truly descriptive."

The exact ground upon which this claim is made does not appear. It is stated in the brief presented by Mr. Wetmore and Mr. Jefferey for the complainant on page 58:

"This is not a trade-mark case. The rights involved here are based solely on the patent."

The claim cannot be founded upon the doctrine of unfair competition, for there is no evidence nor contention on the part of the complainant that the defendant represents its refrigerators to be the refrigerators of the complainant, or that it has dressed them up so as to pass them off as such. In fact, it has always called its refrigerators the "Bohn Syphon" not the "Seeger Siphon" nor the "Siphon." The patent alone cannot be the basis of the complainant's claim. In Centaur Co. v. Heinsfurter, 84 Fed. 955, 28 C. C. A. 581, the Circuit Court of Appeals for the Eighth Circuit said:

"A patent gives no right to any particular name, but simply to the exclusive manufacture and sale."

On the theory that the right is analogous to a trade-mark right, the question arises whether it can attach when the word claimed is descriptive merely. Can a patentee give to his machine a word that is descriptive only, and thereby acquire a monopoly in the use of that word? The complainant claims that it can, but I am satisfied that, where the word is descriptive of both devices, that contention cannot be sustained.

Quinn was not the first person to use the word "Siphon" in connection with a refrigerator. That was done by McKnight in his patent

No. 147,957, February 24, 1874. In his structure he shows a tube which is the shape of a true siphon. His device is entirely dissimilar from the Quinn device, and the latter could in no sense be called an infringement of it. Assuming that both showed real siphonic action, McKnight could not by giving that name to his patented article have prevented Quinn from giving the same name to his, because the word would be as descriptive of Quinn's as of McKnight's, and, as a general rule, it is impossible for any one to obtain the exclusive right to the use of a word or term which is in ordinary use in our language, which is descriptive only. British Vacuum Cleaner Company v. New Vacuum Cleaner Company, 1907, 2 Ch. 312; s. c. 76 Law Journal Reports 1907 (N. S.) Ch. Div. 511. In some of the catalogues published by the defendant it designates its refrigerators as "a dry air refrigerator." The claim of the complainant would require a holding that, by continued use of the term "dry air" to designate its refrigerator, it could acquire the exclusive right to that term, and that a person who manufactured a refrigerator entirely different from the defendant's, but which produced the same dryness of air, would have no right to call his refrigerator a dry air refrigerator. No case has been cited by the complainant to support such a claim. In all of the cases cited by it the name in question was an arbitrary name. In the case of Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540, the word was "Victor." In the case of Adee v. Peck (C. C.) 39 Fed. 210, the word was the proper name "Foley." In the case of Singer v. June, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, the word was the proper name "Singer." In the case of Centaur Co. v. Heinsfurter, 84 Fed. 955, 28 C. C. A. 581, the word was "Castoria." In the case of Gally v. Colt's Patent, etc., Co. (C. C.) 30 Fed. 118, the machine in question was a printing press, and the word in question was "Universal." My conclusion is that, as a general rule, a patentee has no right to give to his invention a name that may describe another device which does not infringe his own, and then claim that he has a right to enjoin a second inventor from using that name which is equally applicable to both.

To avoid the effect of this rule, it was suggested on the argument by one of the complainant's counsel that, it being admitted by both parties that the so-called siphons are not true siphons, the word "siphon" is not truly descriptive, but is, to a large extent, arbitrary. From what follows it will be seen that this contention cannot strengthen the complainant's position. But is the word "siphon" descriptive of the Quinn structure or the Ames structure, or the defendant's 1910 structure? In the Quinn refrigerator the ice compartment is separated from the food compartment by a vertical partition with a series of inverted V-shaped openings, the legs of which are of equal length. In the Ames patent there is this same partition, but the legs are not of equal length, and they are somewhat curved. The 1910 construction of the defendant differs from the Ames construction in having only one leg. It is admitted by the complainant that the so-called siphons in the Quinn patent are not true siphons. Those in the Ames patent are more nearly so, because the legs are of unequal length. All the experts agree that the three refrigerators operate upon the same principle.

Mr. Zeleny, an expert for the defendants, says:

"The manner in which the materials in the food chamber are cooled in all of these refrigerators is by producing a circulation of air which brings into contact with these materials air which has been cooled by previously passing through the ice bunker. The sole cause of this circulation is the fact that the air in the ice bunker, being colder than in the food chamber, is for that reason denser, and it therefore overbalances the column of warmer air in the food chamber. The cold air column is of greater weight and so exercises a greater pressure at the bottom than does the warmer air column in the food chamber. This causes some of the cold air to run down through the bottom of the ice bunker out into the bottom of the food chamber, forcing some of the air from the top and sides of the food chamber over into the ice bunker."

Kimball, a witness for the complainant, says:

"As I understand the operation of the refrigerating apparatus described in the Quinn patent and constructed as I have above stated, it is that the downward movement of the air in the ice bunker caused by the cooling effect of the ice upon the air draws the air from the provision chamber through the passages formed in the partition over into the ice bunker."

Marks, an expert for the defendant, states in his affidavit (page 18):

"I have already pointed out that none of these air ports or passages, whether of the Quinn type or Player type or Ames type or 1910 type, have any true siphon action. They all operate in the same way by the downward suction of the descending column of air in the ice chamber."

Starr, an expert for the defendant, says on page 25:

"In fact, if there be any flow through these ports in any of these constructions—the Reynolds, the Player, the Quinn, the Ames construction complained of, and the 1910 construction—the action would be identical, and would be due to the sucking of the air through these ports, due to the general circulation in the refrigerator."

While there are not in any of the structures true siphons, yet Starr says (page 26):

"The air in these refrigerators is supposed to rise in the food chamber, pass through these ports, and descend in the ice chamber. Its course is similar to that of liquid in a siphon; that is, it rises, curves to one side, and then descends. Such a course pursued by the air in its circulation is not inaptly described to the ordinary mind as 'siphon-like.' "

Wilhelm, an expert for the complainant, after quoting the passage above quoted from the affidavit of Starr, says:

"The same language would fit the Quinn refrigerator."

The short leg of the Ames device is called by some of the witnesses a lip. That lip has been removed in the 1910 construction, but an examination of the three constructions shows that in appearance the 1910 construction more closely resembles the Ames structure than the latter does Quinn's.

Marks in his affidavit says on page 18:

"There is in my opinion as much reason to call the 1910 refrigerator with its modified form of ports a siphon refrigerator as to call the Quinn refrigerator with the inverted V-shaped ports a siphon refrigerator."

It is claimed by the complainant that the defendant is estopped from now asserting that its 1910 construction has any siphonic action. This claim is based upon the orator's contention that the 1910 construction is the Player construction, and that in the progress of the Ames patent

through the Patent Office his solicitors stated that the Player patent showed no siphonic action. As far as the branch of the case which we are now considering is concerned, it is not a suit for the infringement of a patent. The special principles of estoppel in force in such a case can therefore have no effect upon the decision of this motion, so far as the use of the word "siphon" is concerned. The estoppel, if there be any, must be rested upon the usual grounds, and it will be readily observed that scarcely any of the elements of the ordinary estoppel are present. It is thus seen that there is some foundation for the claim that the 1910 construction of the defendant company can as properly be called a siphon as can the Quinn device. If it can, no injunction should be granted, and in the present condition of the evidence a temporary injunction should certainly not be allowed.

There is another view to be taken of the case whether the word "siphon" be considered as a descriptive, or as an arbitrary word. What has been said has been said on the theory that the proofs show that the word "siphon" is a generic name for refrigerators containing the invention of the Quinn patent. If, however, the evidence shows that the word does not designate the Quinn construction, all foundation for an injunction falls. In one of the briefs for complainant it is said on page 34:

"That the Circuit Court of Appeals of the Third Circuit in the suit of the American Car & Foundry Company held that Quinn was the discoverer of the method of refrigeration described as 'siphonage,' and that, while his ports are not siphons in the accurate scientific sense of that term, the word does describe the new and useful invention which Quinn made."

A similar assertion is made in other parts of the brief. I find, however, nothing in the opinion of the Circuit Court of Appeals to support these claims. On page 587 of the copy of the opinion furnished me the court said:

"It is true that the prior art shows a refrigerator in which circulation is to some extent promoted by the use of siphon-like air tubes or conduits. Castell, No. 348,450, contains such air siphons, and there is something approaching siphonic action in Bettridge, No. 208,148, and in Birdsall No. 195,565."

To these might be added the McKnight patent hereinbefore referred to which was not there offered in evidence. The court further said on page 588:

"It is this *series* of open air spaces somewhat resembling siphons *placed between the ice bunker and the refrigerating room* that distinguishes Quinn's patent from all the earlier patents."

If the court had intended to hold that Quinn's construction was properly called a siphon refrigerator it would have italicized the words "somewhat resembling siphons." It did not do this, however, but, on the contrary, italicized the word "series" and the words "placed between the ice bunker and the refrigerating room."

On page 590 the court said:

"What Quinn did was to introduce into refrigerators a new method of promoting the circulation of a confined body of air by the use of the open air spaces in his partition. While he says these spaces 'form, as it were, siphons,' and while his spaces are not true siphons, since both legs are of the same length, still, in both refrigerators, the air currents pass in the same directions through the same parts of the partition, and are induced by the same causes."

The opinion nowhere says that Quinn was the discoverer of the method described as siphonage. It distinctly says that the Quinn refrigerator has no true siphons. It does not say that the Ames patent has not. It nowhere says that Quinn's can be correctly called a siphon system. It nowhere says that the action is siphonic. It did not adopt the word "siphon" as descriptive of the Quinn structure. If it did anything, it rejected it.

It is next contended by the complainant that the Quinn Refrigerator Company manufactured and sold refrigerators between 1895 and 1906 to which they gave the name "Siphon Refrigerators," that the giving of this name by the Quinn Company to its refrigerators led to its adoption by the public, so that prior to 1905 Quinn refrigerators were known as "Siphon Refrigerators." There is nothing in any of the affidavits of Seeger, the president of the complainant, showing any sales by the Quinn Company of its refrigerators, nor any use by it of the word "Siphon" as a name for its refrigerators, nor any designation by the public of the Quinn refrigerator as a "Siphon Refrigerator." Nor is there any evidence of that character in any of the other affidavits presented by the complainant, except in the affidavit of Fred H. Johnson. The claim that the Quinn refrigerators prior to 1905 had been known as "Siphon Refrigerators" rests entirely upon this affidavit of Johnson. In it Johnson says that he is and has been the treasurer of the Quinn Refrigerator Company and of its predecessor, the G. F. Quinn Refrigerator Company, about 12 years. While he says that these companies carried on the business of manufacturing and selling refrigerators continuously from the year 1895 to the year 1906, and sold thousands of refrigerators, yet he mentions the date of no sale of any refrigerator after 1898, except the one instance in which he said that in 1904 the Quinn Refrigerator Company built a large beef cooler at Togus, Me. His statement with reference to the installment of refrigerators in certain steamships relates to a time shortly previous to the Spanish War. His reference to the steamer John English relates to August of the same year, which would be either August of 1898 or 1897. He says that the company always advertised and described the refrigerators made by it as "Siphon Refrigerators"; that the word "Siphon" was prominently used in the first catalogue issued in 1895, and continued to be used in all catalogues issued thereafter; that this word was always used by the Quinn Company, its officers, and employés to describe its patented refrigerators. It is to be noticed, however, that, notwithstanding these statements, he himself in the same affidavit speaks of installing one of his refrigerators in the steamer John English, and calls it a "Quinn Refrigerator," and not a "Siphon Refrigerator." The complainant presented in evidence a catalogue issued by the G. F. Quinn Company for 1897. The word "Siphon" does not appear in the name of the company, nor anywhere upon the outside of the catalogue, although it is used repeatedly in describing the construction of the freezer. This catalogue contains a large number of testimonials, all dated in the years 1895, 1896, and 1897. In no one of these letters does the writer thereof call the refrigerator which he praises a "Siphon Refrigerator," and the word "Siphon" is not used in any one of them. They seem to prove that

for the public at least the generic name of the Quinn construction was not "Siphon Refrigerator." No other catalogue ever issued by the Quinn Company was presented in evidence. It seems strange that some catalogue could not be found if the company after that time carried on a business of any magnitude.

Johnson says in his affidavit that he never knew or heard of any other refrigerator on the market known or designated as a "Siphon Refrigerator," and that he never heard of the White Enamel Refrigerator Company until about 1907, when he was informed of the suit against the American Car & Foundry Company. The evidence conclusively shows that the White Enamel Refrigerator Company between 1900 and 1907 did a large business, and that this business extended over a great part of the United States. The evidence also shows that that company advertised extensively in magazines which had a large circulation in New England. It is very strange, if Johnson were actively engaged in a large refrigerating business between 1900 and 1907, that he never should have heard of the White Enamel Refrigerator Company. The fact that he did not hear of it is an indication that he had practically retired from the business in 1898.

Gebhard C. Bohn in his affidavit states that he had never seen any Quinn catalogue since the 1897 one, and that he had made inquiry and search, and had not been able to find any. Gebhard Bohn says that he never heard of any Quinn refrigerators being manufactured from 1897 to 1905. He says on page 51 in the defendant's evidence that some one, claiming to represent the Quinn Company in 1899, offered to sell him the entire patent for a small sum, which he thinks was about $250. Seeger says in referring to their purchase of the Quinn patent in 1906 that they paid a substantial consideration for it, but does not state how much. I am satisfied from all the evidence that the manufacture and sale of the Quinn refrigerator by the Quinn Company practically ceased after 1898; that nothing ever done by that company gave the name of "Siphon Refrigerators" to their construction; and that the Quinn refrigerator was not prior to the appearance of the complainant and its predecessor ever known as a "Siphon Refrigerator." On May 13, 1905, the Quinn patent was assigned to Gallasch, and on September 27, 1906, Gallasch assigned to it the orator.

Seeger's affidavit states that from early in 1905 he and Gallasch had been engaged in the manufacture of refrigerators under the Quinn patent. This phrase "early in 1905" must refer to some time later than May 13th. Seeger says that the complainant company has continued to manufacture these refrigerators up to the present time, and has done a large business. In the meantime Bohn and the White Enamel Refrigerator Company, either as a partnership or a corporation, had been in the business of manufacturing and selling the Ames Refrigerator from 1899 to May 13, 1905. They began to advertise extensively in 1901, and between that time and 1905 they had expended between $75,000 and $100,000 for that purpose. Their expense for advertising up to the present time was stated by Bohn to be about $250,000. Bohn states in his affidavit that by 1905 they had sold from 25,000 to 35,000 house refrigerators, and that they had equipped the

following named railroad lines which are given on page 36 of their catalogue for the year 1905, marked "Defendant's Exhibit 7":

"The Pennsylvania Lines; Chicago, St. Paul, Minneapolis & Omaha; Chicago, Burlington & Quincy; Chicago, Milwaukee & St. Paul; Chicago & Eastern Illinois; New York, New Haven & Hartford R. R.; Missouri Pacific; Northern Pacific; Southern Pacific; Canadian Pacific; Atchison, Topeka & Santa Fe; Illinois Central; Michigan Central; Wisconsin Central; Western Railway of Alabama; Atlanta & West Point; Great Northern; Southern Railway; Minneapolis, St. Paul & Sault Ste. Marie; New York, New Hampshire & Hudson River; Chicago, Rock Island & Pacific; Union Pacific; Pullman Car Co.; Louisville & Nashville R. R.; Chicago & Alton."

The evidence shows that the business had by 1905 been well established, and that the "Bohn Syphon Refrigerators" had become well known. It also shows that all the refrigerators made under the Ames patent were called by the defendant company "Bohn Syphon Refrigerators," and that none of them were called "Siphon Refrigerators." The extent of the business of the defendant, as indicated by its testimony, is practically admitted by the orator. It follows, therefore, that, when Gallasch and Seeger started in business in 1905 or 1906, they found upon the market a refrigerator equipped with the Ames device, and that this refrigerator was well known as the "Bohn Syphon Refrigerator." The evidence does not show that after the orator entered the field it did a very extensive business. In any event, it does not show that it displaced the Ames refrigerator, nor does it show that a refrigerator equipped with the Quinn device was generally known to the public as a siphon refrigerator. The witness Starr, who seems to have had opportunities for knowing, says on page 26 of defendant's evidence:

"It is true that the Seeger Manufacturing Company advertises the 'Seeger Syphon Refrigerator,' but it has sold so few of these refrigerators, and, so far as I have known, has advertised them so slightly, compared with the sales and advertising of the White Enamel Refrigerator Company, and the sales of the Seeger Refrigerator Company's refrigerators have been so limited to specific localities, such as the cities of New York and Philadelphia," etc.

Complainant has presented six or seven affidavits which may be called stereotyped. They are identical, with the exception of the name, place of business, and experience of the affiants, and are made by dealers in different parts of the country. The defendant has pursued the same plan, but has presented three or four times as many affidavits of this character. I agree with what the orator says in one of its briefs with regard to this sort of testimony. On page 60 it is said:

"Affidavits of this nature which are obtained by sending them out to the affiants in one general form without a personal interview with each witness are not entitled to much confidence."

I cannot, therefore, find that the statements made in these affidavits of the complainant to the effect that the words "Siphon Refrigerator" have come to mean to the public a refrigerator made under the Quinn patent or a similar construction are sufficient to establish that as a fact. The conclusion from the evidence must be that the word "siphon" never has been and is not now a generic name for a Quinn refrigerator; on the contrary, if the public knows any refrigerator as a "Si-

phon Refrigerator" it knows those of the Ames construction as such, and refrigerators of this kind never were manufactured by the orator.

It is, however, strongly insisted that the Ames device has been held to be an infringement of the Quinn device; that therefore the name by which the Ames device was known must be the name by which the Quinn device was known; and the resulting claim is that the owners of the Quinn patent now have a right to the name which the defendant gave to the Ames structure, which name has, as the orator says, been accepted by the public.

The Circuit Court of Appeals did hold that the defendant could not use the Ames patent, because that infringed the Quinn patent, but it did not hold, and no court has yet held, that the owners of the Quinn patent have the right to use the Ames patent. The Ames patent has not yet been held invalid. The Circuit Court of Appeals said in the American Car & Foundry Company Case:

"The form of Ames' air spaces may be an improvement upon the form of Quinn's air spaces, but, even if so, that fact does not entitle Ames to appropriate as against Quinn the essential features of the Quinn patent, or to extend, as against the public, the term of the monopoly granted to Quinn. If Ames invented an improvement upon Quinn, his patent must be limited to that improvement."

The Ames patent is prima facie valid, and it is impossible to hold upon a motion for a preliminary injunction and upon the evidence now presented to me that it does not represent a patentable improvement over the Quinn device. The evidence therefore shows that, if any one gave the name "Siphon Refrigerator" to any of these devices, Bohn gave it to the Ames device, and that the orator has no right to its exclusive use to designate the Quinn Refrigerator.

I do not understand that it is claimed by the complainant that the decision made in the district court of Ramsey county, Minn., in the litigation there between these same parties, is conclusive in the present case. It cannot well be so, for it was not held in that case that the White Enamel Refrigerator Company was not entitled to use the word "Syphon" in connection with its 1910 construction. The decision was that the White Enamel Refrigerator Company was entitled to no relief against the Seeger Refrigerator Company by reason of unfair competition. The findings of fact in that case with reference to the use of the word "Syphon" cannot be controlling in this case, because it does not appear that the same evidence was presented in that case as is presented here.

The claim is apparently made in one of the briefs of the complainant that Gebhard Bohn and his associates, Gebhard W. Bohn, John A. Seeger, and John H. Ames, having made a contract with the Quinn Refrigerator Company in 1897 for the use of that patent, acted under the contract long enough to enable them to carry the Ames patent through the Patent Office, and that they then abandoned the Quinn patent, and it is suggested that they pirated the Quinn invention. It is to be noted in this connection that John A. Seeger, president of the complainant company, was one of the persons interested in the contract with the Quinn Company in 1897. While the Ames patent was in the Patent Office he joined with the other people interested therein in an

affidavit as to the efficiency of the Ames device.   Bohn says that Seeger was more active in pressing for the adoption of the Ames form than any one else, and that it was at his instigation that a patent was applied for upon it; that he was the one who negotiated with the patent attorneys for filing the application, and all through the time of the pendency of the application was the one most actively interested. When Gebhard Bohn in 1899 left the Bohn Manufacturing Company, Seeger remained with that company until its failure in 1904, and during all of the time when Seeger was connected with it it manufactured the box part of the White Enamel refrigerators.   It was in 1905 when Gallasch, who was also connected with the Bohn people in 1899 in the refrigerator business, acquired an interest in the Quinn patent.   It was on September 29, 1906, that the complainant acquired title to the Quinn patent, and it was on October 15th, less than three weeks later, that the complainant commenced its suit against the American Car & Foundry Company.   No one originally connected with the Quinn patent in 1897 has now any interest therein.   The present litigation, so far as it appears, is between persons who were jointly interested in securing the Ames patent, and who participated in the manufacture of refrigerators thereunder until 1904.

My conclusion upon this branch of the case is that the motion for a temporary injunction, so far as it relates to the use of the word "Syphon" or "Syphon System," must be denied.   The Circuit Court for the Southern District of New York in the case of Seeger Refrigerator Company against Harry S. Parks arrived at the same conclusion. The complainant in that case is the complainant in this case, and the defendant there was claimed to be an agent of the White Enamel Refrigerator Company.   The same relief as to the use of the word "Syphon" was asked there as is asked here.

The motion, so far as it asks that the defendant be enjoined from the use of the words "Siphon," "Siphon System," and "Syphon" or "Syphon System," is hereby denied; but let an injunction issue restraining the defendant, as prayed for in the complaint, from manufacturing or selling refrigerators embodying inventions covered by the Quinn patent.

The amount of the bond which the orator will be required to give upon the issue of the injunction will be fixed upon notice.