UNITED STATES GYPSUM CO. v. BESTWALL MFG. CO.

(District Court, N. D. Illinois, E. D. July 21, 1919.)

No. 779.

Patents ⬪328—Validity and Infringement—Plaster Board.

The Utzman patents, No. 1,029,328 and No. 1,034,746, respectively for a process of making plaster board and a plaster board product, disclose invention, which is in the turning over and sealing the edges of the bottom layer of paper, to prevent the breaking of the edges in handling the board; also *held* infringed.

In Equity. Suit by the United States Gypsum Company against the Bestwall Manufacturing Company. On final hearing. Decree for complainant.

Hill & Hill and Edward Rector, all of Chicago, Ill., for plaintiff. Clarence E. Mehlhope, of Chicago, Ill., for defendant.

SANBORN, District Judge. Infringement suit on two patents, Nos. 1,029,328 and 1,034,746, issued June 11, 1912, and August 6, 1912, to Clarence W. Utzman, and assigned to plaintiff. The inventions relate to the process of making plaster board for building purposes, and to the plaster board product. In the process patent the invention is thus described:

"This invention relates to the method of making plaster board, and aims to produce a board which shall be more durable than any plaster board heretofore made, and which will give better results and more satisfactory service in use, and which will better withstand the handling to which all plaster board is necessarily subjected.

"Plaster boards of various kinds have been made prior to my invention, some of which have been made in molds and others of which have been made by a continuous process, consisting in applying alternate layers of plaster and paper or other fibrous material upon a traveling base sheet. The mold method of making plaster board is objectionable, however, for the reason that the size of each slab of board is necessarily limited, and, furthermore, for the reason that this method of making boards is a slow, tedious, and expensive operation. In the continuous method of making plaster board it has been the practice to superimpose the alternate layers of plaster and paper and then to trim the edges of the board, leaving the raw edges of the plaster and the raw edges of the paper at each side of the board. The paper or covering material in this construction is very easily torn, and the edges of the board are readily chipped or broken, so that after repeated handlings the boards, when ready for use, are usually mutilated to a considerable extent.

"My present invention aims to obviate the disadvantages of the boards previously employed, and to construct a board the edges of which will be entirely inclosed by a sheet of covering material and in which there will be no free or exposed edges of covering material which will be liable to be torn, loosened, or peeled back in the handling of the board."

---

⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Referring to Figure 5, it will be seen that the lower edge of the guard is beveled, and it will be evident that as the conveyer travels along, carrying the partially completed board with it, the inturned edge *10* will be gradually compressed into the upper layer of plastic material."

The first claims of each of the patents follow:

No. 1,029,328: "The method of making plaster board which consists in advancing a bottom sheet of covering material, superimposing upon said sheet alternate layers of plastic material and fibrous material, holding the plastic material away from the edges of the covering material so as to leave a portion of said material exposed at each side of said layers, folding the exposed edge portions of said covering material over onto the upper surface of the upper layer of plastic material, applying a separate sheet of covering material over the upper surface of plastic material, said upper sheet being of a width sufficient to partially cover the inturned edges of said bottom sheet, applying pressure to said upper sheet to cause the plastic material to flow between the edges of said sheet and the inturned portions of the bottom sheet, and preventing said plastic material from escaping at the edges of said upper sheet."

No. 1,034,746: "A plaster board comprising a body, a covering of fibrous material adhering to one face of the body, folded to inclose an edge of the body and overlie a portion of the opposite face thereof, and a covering of fibrous material for said opposite face of the body overlying said folded-over portion of the first-mentioned covering, but having its edge spaced from the edge of the board."

It will be noticed that the process claim speaks of alternate layers of plastic material and fibrous material, while the product claim refers only to a body, which, of course, may consist of the alternate layers or of a single slab of plastic material. One defense is that defendant's board is not made in alternate layers, but in a single plastic one. Plaintiff insists that the building up of the body of the board in alternate layers of plaster and paper was not of the essence of the invention, but that the really new thing discovered by Utzman was the upturning of the edges of the bottom layer of paper, and then sealing or impressing the top layer of paper, a little shorter than the completed board, over the upturned ends of the bottom layer, and into the layer of plaster. Plaintiff's counsel contend that the case falls within the rule of Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540, in this circuit, to the effect that an element of a claim not essential to the result which the inventor desired to accomplish is not absolutely requisite in an infringing device. The construction in alternate layers not being essential to the result which Utzman wished to reach, the fact, it is said, that defendant does not use alternate layers in its board is immaterial.

It appears by looking at the prior patents that it was old and common to make "sandwich" board of alternate layers. Utzman did not attempt to claim this as a new feature, but rested his title to invention solely on the turned-over edges, and the impressing of the shorter upper sheet of paper into the plaster, so as to seal up the finished board, and secure the edges against abrasion of the paper. His whole right to invention lies in the new method of binding and sealing the edges, and finishing the board with the top covering of paper. This had never been done before, and the product has utility beyond that shown in the prior art. Here we have novelty and utility, also fol-

lowed by commercial success. These are enough to sustain any patent not a mere aggregation, or where the advance is so slight as to be unimportant.

Since the alternate layer construction is not of the gist of the invention, a broader range of equivalents is applicable. Defendant's process is somewhat different from the patented one, not so finished or complete, and its board is not so well made. The witness Alfreds says:

"I might say here that the finished board comprises a top and a bottom sheet of paper with a layer of plaster between them. The margins of the bottom sheet of paper are turned into the mass of wet plaster in the process of making the board, so as to bind and finish the edge of the board, and to make the margins of the top sheet adhere to the plastic material."

Defendant's counsel thus describes its process:

"It consists of advancing a continuous bottom sheet of paper, of turning over the marginal edges of the bottom sheet, so that they project into a position in a plane spaced above the plane of the bottom sheet (approximately two inches—D. R. 32, Q. 29), of depositing on said bottom sheet a plastic mixture of the required workable consistency and of spreading it roughly over the sheet, so that it covers said sheet and also its turned over edges, mold boards at the side of the sheet limiting the flow or spread of the plaster to the edges of the board to be made, and of passing the bottom sheet together with the plastic mix over a bottom roll and under a top spreading roll, about which is passed a top sheet (narrower than the bottom sheet and of substantially the width of the board to be made), so that said top sheet is engaged with the exposed plaster and adhered to the plastic surface presented across the width of the board.

"The process, if it may be called such, is crude in the extreme, and no attempt is made to provide for any nice or pretty result. The top sheet is attached to the body of the board (consisting of the bottom sheet with its turned over edges and of the plastic body covering the bottom sheet and its turned over edges) in exactly the same manner and by the same method or process as where unbound board is made, consisting of bottom and top sheets with a layer of plaster between."

While there are differences both in process and product, I think defendant infringes both patents, and in all their claims. Some of defendant's board clearly does not infringe claim 2 of the process patent, but in other samples in evidence infringement appears. The alternate layer feature not being of the real spirit of the invention, a wider range of equivalents is applicable, so as to make the defendant's single layer process and board equivalent. Jones v. General Fireproofing Co., 254 Fed. 97, 100, —— C. C. A. ——.

There should be a decree for plaintiff, finding both patents valid and infringed, and for an accounting of damages and profits on all the claims, with costs.